# Richmond.

## FERRY AND AL. *v.* CLARKE AND ALS.

### April 12th, 1883.

1. SPECIFIC PERFORMANCE—*Rescission—Statu quo.*—Applications for specific performance of contracts are addressed to the sound discretion of the court. So likewise are applications for rescission thereof. Rescission will not be decreed unless the court can place the parties *in statu quo.* Both are often refused, and the parties left to their remedies at law.

2. IDEM—*Idem—Amended Bill—Laches.*—In suit for specific performance, the court may allow the plaintiff to amend his bill and ask, and in a proper case there may be decreed a rescission of the contract. But where, by the conduct of him thus amending and asking rescission, the specific performance of the contract has become impossible, rescission will be denied.

3. IDEM—*Rescission—Entire Agreement.*—If rescission be decreed, it must be of the entire agreement, and not of parts thereof.

4. IDEM—*Idem—Case at bar.*—W. purchased "Poplar Grove" at $12,037 and paid all but $2,795.75. In 1860, W., Mrs. C., and B. agreed under seal that B. exchange "Lammermoor" with Mrs. C. for "Millers," and convey it to W., who in consideration thereof and of $4,000, would convey Poplar Grove, priced at $14,000, to her. She paid the $4,000, and took an indemnifying bond with security, but the lien on Poplar Grove for the unpaid balance remained unsatisfied. In 1867, B. and Mrs. C. sued W.'s representatives for specific performance (no conveyances having been made); and for sale of Lammermoor to pay off said lien; to enforce which W.'s representatives had brought suit. In 1869, the circuit court decreed specific performance, and also sale of Lammermoor, to relieve Poplar Grove. Mrs. C. sold parts of Poplar Grove to six different purchasers, who paid her $2,608, and received conveyances. In May, 1878, a decree was entered to sell Poplar Grove to pay off the lien thereon. It was sold. D. purchased it, Mrs. C. going his security for $2,756.25. Sale was confirmed and deed made. In November, 1878, in suit of B. and Mrs. C. for specific performance, it was

decreed that by the sale of Poplar Grove to satisfy the lien thereon the object of the suit for specific performance had been frustrated; that the decree to sell Lammermoor be rescinded; and that Mrs. C. had leave to file an amended and supplemental bill.  B. had been adjudicated a bankrupt in 1872.  After due proceedings in the bankrupt court, B.'s assignee, in 1873, sold Millers to F.  The sale was confirmed, the money paid, F. put in possession and received conveyance.  Afterwards he sold and conveyed part of Millers to H.  But neither B.'s assignee, nor F. nor H. was made party to the suit of B. and Mrs. C.  In a few days Mrs. C. filed her new bill, making them and W.'s representatives parties.  By it she asked rescission of the contract of 1860, restitution of Millers to her, and repayment to her of the $4,000, with interest. F. and H. answered.  At the hearing in 1880, the circuit court decreed that Mrs. C. had been evicted from Poplar Grove by the sale thereof; that having been thus deprived of Poplar Grove, for which she had paid Millers and the $4,000, and still retaining title to Millers, she was remitted to her rights to Millers; that within thirty days, F. and H. should surrender to her possession of Millers; and that W.'s administrator should *de bonis testatoris*, pay her $4,000, with interest from sale of Poplar Grove.  On appeal to this court—

HELD:

1. By her own acts Mrs. C. was estopped from asking rescission of the contract of 1860, which rescission would result in injustice to others who could not be placed *in statu quo.*

2. If under the circumstances any loss follows, she should justly bear it, because by her own *laches* she had let slip ample opportunity to protect herself against the encumbrance on Poplar Grove by neglecting to apply part of the $4,000 paid by her to W., to the satisfaction of that encumbrance, and by neglecting to employ the indemnifying bond given her by W. for that very purpose.

3. There should be a decree for specific performance of the contract of 1860.

4. Lammermoor should be sold to reimburse Mrs. C. for any money she has had to pay to satisfy the encumbrance on Poplar Grove.

5. F. and H., the purchasers of Millers, for value, without notice, are entitled to hold that tract of land in undisturbed possession.

Appeal from decrees of the circuit court of Essex county, rendered, the one on 3rd May, 1879, and the other on 16th March, 1880, upon an amended and supplemental bill and proceedings thereon, wherein Ann R. Clarke was plaintiff, and John T. Ferry and John D. Hutchinson were defendants.  The facts are suf-

ficiently indicated in the syllabus, and stated in the opinion of the court.

*J. G. Mason,* and *T. R. B. Wright,* for the appellants.

*James Alfred Jones,* and *O. G. Kean,* for the appellees.

LACY, J., delivered the opinion of the court.

On the 11th day of January, 1860, an agreement was made and entered into between Edward L. Wright, Ann R. Clarke, and John L. Boughton, of the county of Essex, for the exchange among the said three parties of three tracts of land situated in the said county, upon terms therein set out. This agreement is in the following language: "That whereas an exchange of lands has been this day made between said Wright and said Clarke and John L. Boughton, thus, said Wright contracts to sell to said Clarke, Poplar Grove estate in Essex county, Virginia, and to make to her a good title for same, free from all incumbrance, for fourteen thousand dollars, the deed to be made so soon as said Wright can get a title from the executor of Thomas Wright, Sr., deceased, and to indemnify said Clarke in the meantime by bond and good security, said Clarke to make to said Boughton a deed of general warranty for Millers, containing five hundred and fifty acres, the land to be surveyed, if said Boughton desires it, the excess to be paid for if it exceed five hundred and fifty acres, and the deficiency to be made good if it falls short, at the rate of ten thousand dollars for five hundred and fifty acres, ten thousand dollars being the price agreed on to be paid by said Boughton for Millers, and said Boughton to make to said Wright a deed for Lammermoor, granting such title as he has in and to it, in consideration of said Clarke's grant to said Boughton, of Millers, which said Wright agrees to take in lieu of ten thousand dollars toward the payment for Poplar Grove. Said Clarke to execute her

bonds with security for four thousand dollars, payable in equal sums of thirteen hundred and thirty-three dollars, thirty-three and a third cents each, one payable December the 15th, 1860 ; one December the 15th, 1861, and the other December 15th, 1862, all bearing interest from December 15th, 1859, payable to said Wright. Said Wright agrees to give to said Clarke possession of Poplar Grove at once, said Clarke to pay for the wheat crop in the ground two dollars and twenty cents per bushel, at the same time said Wright has to pay for same; said Clarke agrees to give Boughton possession of Millers so soon as she can move, say in thirty days, said Boughton to pay her for the crop of wheat in the ground the same price she is to pay said Wright at the same time, and also the price she paid for two tons of guano ; and said Boughton agrees to give said Wright possession of Lammermoor, so soon as he, said Bough-ton, gets Millers, said Wright to pay for the crop of wheat in the ground the same price he gets, at same · time, except the Boughton wheat seeded, which said Boughton reserves.   To all which the said parties bind themselves the one to the other in the penalty of ten thousand dollars each.

" Witness the following signatures and seals.

" EDW'D L. WRIGHT,     [Seal.]
" ANN R. CLARKE,     [Seal.]
" JOHN L.` BOUGHTON,     [Seal.]

" Witness—

    " TH. CROXTON."

Under this contract all the parties thereto took immediate possession of the respective farms as agreed on between them. The said Edward L. Wright died in the year 1860, before he had made the *deed* to Mrs. Clarke for Poplar Grove ; and on the 10th day of October, 1867, the said John L. Boughton and Ann R. Clarke brought their suit in chancery in the circuit court of Essex county against John J. Wright, administrator of Edward

L. Wright, deceased, William Wright, executor of Thomas Wright, Sr., deceased, and the widow and children of Edward L. Wright, deceased, for specific performance of the said contract. In which they set forth that the possession had been given of the said three tracts of land under the terms of the said contract during the lifetime of the said Edward L. Wright; that the said Clarke had paid to the said Edward L. Wright the $4,000 she had agreed to pay for the Poplar Grove tract of land; that she had tendered the deed for Millers to Boughton; that Boughton had offered to make to Wright in his lifetime a deed for Lammermoor so soon as he, Wright, had made the deed to Poplar Grove to Clarke; that Wright had died without making the deed to Clarke for the Poplar Grove tract; that they are still willing to complete their portion of said agreement, and pray its enforcement against the heirs and distributees of said Wright; that the personal estate of said Wright was insufficient to pay off the liens on the Poplar Grove tract, due to his father's estate for the purchase of the said Poplar Grove tract, and praying that the real estate of said Edward Wright might be sold to pay off the amount still due the estate of the elder Wright for the purchase of Poplar Grove tract, and that a commissioner might be appointed, directed to make to the said Clarke a deed for Poplar Grove, upon the making and tendering the deeds respectively for Millers and Lammermoor by Clarke and Boughton. To this bill the defendants made answer, admitting the agreement aforesaid, saying there was nothing to prevent the immediate execution of deeds for Millers and Lammermoor, respectively, by Clarke and Boughton, as they had been paid for in full by the exchange; that Edward L. Wright died on the 7th day of October, 1860, before the balance of the purchase money on Poplar Grove had been paid by Clarke; that the war began soon after the death of Edward Wright, and so impaired the said Wright's estate as to render it impossible for the representative, or heirs of the said Wright to pay the balance due on the Poplar Grove tract to the estate of the elder Wright, but

that Clarke could not be injured thereby, as she had possession of Poplar Grove, and her title *indemnified by bond and security;* that the estate of Edward Wright was ample to pay all his debts, if his real estate was not sacrificed at a forced sale.

On the 18th November, 1867, a decree was entered in the cause, directing one of the commissioners of the court to take an account of the unpaid purchase money for Poplar Grove, and leave given the plaintiffs to file an amended bill to make new parties; and on the 13th of January, 1868, an amended bill was filed in the cause, making the distributees of the estate of Thomas Wright, Sr., parties to the suit, and asking the sale of Lammermoor to pay to the estate of the elder Wright the balance due for Poplar Grove, and that the agreement hereinbefore set forth be decreed to be specifically performed.

On the 19th of February, 1868, the commissioner reported to the court the balance due from Edward Wright's estate to the estate of Thomas Wright, Sr., for the purchase of Poplar Grove to be $2,796.75, with interest from the 15th day of December, 1859. On the 1st day of May, 1868, a decree was entered upon the said commissioner's report *decreeing specific execution* of the contract of January 11, 1860, and decreeing a sale of the Lammermoor tract to pay the balance due by the estate of Edward L. Wright for the purchase of the Poplar Grove tract, and appointing commissioners to make the sale. The consent of the adult parties was, however, required before the sale was to be made. On the 27th day of August, 1869, another decree was made for the sale of Lammermoor peremptory in its terms unless the amount due for Poplar Grove should be paid within ninety days. On the 16th day of November, 1870, another decree was entered directing commissioners named therein to sell the Lammermoor tract. On the 14th of November, 1871, a decree was entered directing the sale of Poplar Grove to pay the balance due on it for the purchase money to the estate of the elder Wright, and the same commissioner appears to be named in all these decrees for sale of the said tracts of land. The same decree

ordered certain accounts to be taken in the cause, and consolidating the cause of *Wright* v. *Wright,* which was a suit to subject Poplar Grove to the payment of the unpaid purchase money due by Edward L. Wright, and the cause of *Boughton and Clarke* v. *Wright.*

On the third day of November, 1877, an order was entered rescinding so much of the decree of November 14th, 1871, as consolidated the two causes; and on the sixth day of November, 1878, a decree was entered, declaring that the agreement of January 11th, 1860, was not capable of specific execution, *because* the same had been defeated by the sale of Poplar Grove, as ordered by the decree of November 14th, 1871, in the suit of *Wright, &c.* v. *Wright,* to satisfy the lien thereon for the purchase money due the estate of the elder Wright, which sale had been confirmed at that term of the court, and that the object of the suit had been frustrated; that the agreement of January 11th, 1860, could not, therefore, be specifically performed, and all the decrees entered for the sale of Lammermoor were rescinded. And Ann R. Clarke was given leave to file her amended and supplemental bill. And on the 18th of March, 1879, Ann R. Clarke did file her amended bill in the cause, setting forth the matter of her first bill, and that Poplar Grove had been sold to one Derieux, for $2,756.25, and that the said purchaser *now had possession* of Poplar Grove. That Millers had been sold by the district court of the United States for the eastern district of Virginia for the debts of Boughton, and that J. T. Ferry, and J. D. Hutchinson had purchased and now had possession of it, but that they had not just claim to it, but must assert their claim against Lammermoor; that she had a claim against Wright's estate for $4,000 she had paid Wright for Poplar Grove, in excess of Millers; that she was entitled to have restitution of Millers and of the $4,000. That no sale had ever been made of Lammermoor, and the decree for the sale of the same had been rescinded, and she had been allowed to file her amended bill which she accordingly did.

This bill was demurred to, and the demurrer overruled, and leave given the defendants to answer in ninety days; and Ferry and Hutchinson filed their answers accordingly, and set up in their defence the facts as recited herein.

On the 16th day of March, 1880, a decree was entered in the cause, rescinding the contract of January 11th, 1860, in which the court decided that the said Ann R. Clarke was entitled to be restored to Millers, and to be repaid the $4,000 she had paid for Poplar Grove to Wright, which Wright's executor should pay her with interest, and costs of her original bill, and Ferry and Hutchinson should deliver up to her Millers, and pay her the costs of her amended bill. And from this decree the appellants, Ferry and Hutchinson applied to this court for an appeal and *supersedeas,* which was allowed July 10th, 1880.

The facts thus appearing disclose the history of a remarkable cause. But while they are perhaps all that it is material to state with reference to the decree to be entered in this court, there were other and striking attitudes assumed by this cause during its progress for thirteen years in the circuit court of Essex—among them the suit of *Roy* v. *Hoskins,* which was a suit to subject the Poplar Grove tract to the debts of Mrs. Clarke's husband, Thos. N. Clarke, deceased; in which it was discovered that Mrs. Clarke, after going into possession of Poplar Grove, sold portions of the said tract to raise the money due Wright, and conveyed the said Poplar Grove in trust to secure a debt due the creditors of her deceased husband; and in which it was decreed that Mrs. Clarke was entitled to dower in the Poplar Grove tract of land—by decree therein on the 18th day of February 1873; that in the year 1878, Poplar Grove was sold and bought by Mrs. Clarke, that is, such part as she had not already sold to others; this sale was not reported to the court. The record discloses the fact that Mrs. Clarke not only conveyed this tract in trust, but that from time to time she sold by deed with general warranty tracts of land cut off from Poplar Grove to as many as six different persons, and consti-

tuting a large part of the estate, and when the second sale of Poplar Grove was made and bought by Derieux, the whole tract was sold for $2,756.25, including that she had already sold for $2,500, and Mrs. Clarke appears as the security on the bonds of the purchaser, and she says in her replication to the answer of Ferry, that the whole of Poplar Grove was sold, and that she is liable to the parties who bought of her, and that she sold these parts of Poplar Grove *with full responsibility therefor.* After all these acts of ownership by Mrs. Clarke for so many years, including the actual sale of a large part of the Poplar Grove tract to strangers, the circuit court rescinded the agreement at her instance, by which she acquired and disposed of a large part of Poplar Grove, and restored her to Millers also, with which she had parted under the said agreement.

We think this decree of the circuit court plainly erroneous. A decree had been entered in the cause decreeing specific performance of this contract, and a sale of Lammermoor ordered to pay the debt due on Poplar Grove by Wright, who was the owner of Lammermoor under the agreement of January, 1860. If Lammermoor had been sold there would have been no difficulty about paying the debt on Poplar Grove out of the proceeds. But the sale of Lammermoor is not had, and the circuit court says that the agreement of January 11, 1860, was incapable of being specifically performed because Poplar Grove had not been sold. The sale of Poplar Grove was made by the circuit court before the sale of Lammermoor, and there could have been but one object in this. The too obvious effect indicates plainly enough the change of policy of Mrs. Clarke in the premises. The parties to the agreement of January, 1860, had carried out and executed the same in all respects except by executing the deeds, and if Mrs. Clarke had availed herself of her bond of indemnity, which she does not deny she had, although it was alleged in the sworn answer of the defendants, or when she paid the $4,000 realized by the sale of the parts of the Poplar Grove tract of land, if she had caused the same to be applied to the ex-

tinguishment of the $2,756 due on her tract of land to the credi-
tor holding the lien and the legal title to the land to secure it,
her purchase and her title would have been complete. If she had
a bond of indemnity, with security which satisfied her, and she
chose to waive this her material right and pay the money to
Edward L. Wright, to be wasted by him, in conscience she
should herself bear the loss, certainly as against Ferry and
Hutchinson, she is estopped from saying the agreement cannot
be specifically performed, for if it cannot be, she herself made it
so incapable of being fully performed. Upon the plainest prin-
ciples of equity she cannot ask the court to rescind the agree-
ment which she herself has made it impossible for the court to
rescind, without the grossest wrong to everybody but herself,
by selling and disposing of the very land which she took under
the agreement. It is not now in the power of the court to
restore the parties to their original condition, and a rescission
should never be made except when the court can restore the
parties to their original condition. Where a contract is assailed
in a court of equity, the court may not only refuse to carry it
into execution, but may lend its aid to set it aside.  2 Broken-
borough, 150. It may be said that a great difference exists
between contracts executed and executory.

Mr. Justice Buller observes, "there is a sound distinction
between contracts executed and executory, and if an action be
brought with a view to rescind, you must do it while the con-
tract continues executory, and then it can only be done on the
terms of restoring the other party to his original situation."
There can be no partial rescission of a contract, it must be
done *in toto*, or not at all.  *Glassel* v. *Thomas*, 3 Leigh, 113.

If a contract has been carried into execution, and the applica-
tion is to a court of equity to rescind it, that court will not lend
a ready ear to a complaint of inadequacy, where there has been
no fraud, concealment, or mistake such as may call into action
the discretion of the court of equity which exists in such cases.
All applications to a court of equity for specific performance of

a contract are addressed to its discretion.   It is one of the prin-
ciples of equity that it looks upon things agreed to be done as
actually performed, and consequently as soon as a contract is
made for the sale of an estate, equity considers the buyer as the
owner of the land, and the seller as the trustee for him; and on
the other hand, it considers the seller as the owner of the money
and the buyer as a trustee for him.   6 John. 398, 403; 1 Mad.
289; Sug. 130.   As neither party can rescind the contract with-
out the assent of the other (2 John. 534; 5 T. R. 402) a court of
equity considers a change of property so entire and absolute,
that even *before a conveyance is made* the buyer is regarded as
the owner of the real estate, which will descend and pass to his
heirs as such, if he should die before he gets the title; whereas
the seller is, in the eyes of equity, so completely divested of the
realty even before a conveyance, that the unpaid purchase
money will pass to his executor instead of going to his heirs.

In the contract, the subject of this suit, possession was deliv-
ered of the three tracts of land, and, as we have seen, the
appellee used and occupied, encumbered, and, in large part,
aliened the land she has since sought to surrender upon a re-
scission of the contract.   A court of equity in a suit for specific
performance, may allow the plaintiff to amend the bill, and ask,
and then, in a proper case in the exercise of a sound discretion,
rescind the contract.   Lomax Dig., vol. 2, page 108.

When it appears in the progress of the suit upon a bill filed
for the specific execution of a contract for an exchange of lands
that the defendant cannot comply with his contract, the plaintiff
may be allowed to amend his bill and to ask for a rescission of
the contract.   *Parrill* v. *McKinley,* 9th Gratt. 1.

That case proceeded upon the ground that the defendant was
unable to make the deed to his land.   In this case no such
state of things existed.   Boughton was able and willing, and so
admitted to be by the appellee, to make the deed, and he had
specially contracted against a warranty of his title, though no
cloud seems to have rested upon it.   In the original bill under

which the court decreed specific performance, it is admitted by the appellee that such was the case, but the death of Wright was alleged to be the circumstance which rendered the aid of a court of equity necessary. The agreement set forth in the written contract filed had been executed by delivery of possession and acts of ownership by each party over the parcels of land exchanged. In regard to Millers, the whole land had been sold for Boughton's debts. Poplar Grove had gone into possession of the appellee, and a large part of it aliened and all encumbered by a trust deed to pay debts due by her, and the other tract had been decreed to be sold to pay the debts of Boughton's vendee, Wright, and then in that condition of things, nineteen years after the execution of the contract, the circuit court decreed a rescission of the same upon the ground that it had become impossible of execution, and calls it an executory contract incapable of execution. The effect of this decree is to rescind the contract as to one tract of land and leave the other in the possession of strangers to the contract of exchange. It is well settled law, as is claimed here, that a mutual error of the parties in a matter which is the cause of the contract is a good ground for rescinding even an executed contract—3 Leigh, 135 ; but there is no good ground here to maintain the pretext of mistake. The books abound with cases in which contracts have been rescinded, or their specific execution refused because of an essential mistake in the thing contracted for. 5 Munf. 185, and cases there cited.

It is obvious no rescision should have been decreed in this case. The conduct of the appellee, her delay to ask for it, her acquiescence, her sale of a part of the land, and conveyance of the whole land, are conclusive against the right to rescind in any form in which the bill might have been filed. *Robertson* v *Hogshead,* 3 Leigh, 729.

It was the appellee herself, who, by her conduct, created the only impediment to receiving a deed to the land she bought in the first instance and without delay. When she came to pay the

$4,000 due by her for the purchase of the land over and above the value of her land exchanged, it was in her power to have paid the $2,756 due as a prior lien on the land she bought, of which the record shows she had full notice; her own bonds being ante-dated in order to correspond in date with the bonds due by Edward Wright to Thomas Wright's executor; but she failed to do this, and paid that money to Edward Wright. Nothing could be more unjust than to hold Boughton, or those claiming under him, responsible for her misconduct and for her benefit withal.

The application to a court of equity to rescind or cancel contracts for lands, like that for specific execution, is addressed to the sound judicial discretion of the court, and in the exercise of that discretion, the court not unfrequently refuses to rescind when it would also refuse to decree the contract to be performed, thus leaving the parties to their respective remedies at law. The maxim here is emphatically applied, he who seeks equity must do equity. 1st Story's Equity, section 693. And the cases in which rescission should take place may be briefly stated to be those where there is a material mistake in the substance of the thing contracted for, or a fraud perpetrated upon him who applies for the aid of the court. 3 Rand. 552; 6 Rand. 594; *Glassel* v. *Thomas*, 3 Leigh, 113, and cases cited; and if decreed at all, it should be complete and entire. *Bailey* v. *James*, 11 Gratt. 468, 475.

A mistake in law, however, where there is neither fraud, concealment, nor mistake in fact, constitutes no ground for rescinding a contract. *Brown* v. *Armistead*, 6 Rand. 604; 3 Rand. 504; 8 Gratt. 70; 21 Gratt. 313. And in every case of rescission the court must place the parties *in statu quo*. And, therefore, if the party complaining has done any act by which the rights of the other are affected so that he cannot be replaced *in statu quo*, he *cannot afterwards repudiate* the contract. *King* v. *Hamlet*, 2 Mylne & Keen, 456.

The decree of the circuit court rescinding the contract in this

cause was in plain violation of all the rules of equity applicable to the case and is erroneous, ·and is reversed and annulled. Under the circumstances of the case the court should decree specific performance of the contract, and to effectuate the same Lammermoor should be sold and the proceeds applied to the payment of the lien on· Poplar Grove due to Thos. Wright's executor, so far as the same will go, and the three tracts of land decreed to be *held under the terms of the contract, as of the day of its date.*

The decree is as follows :

The court is of opinion for reasons stated in writing and filed with the record, that the decree in this cause of the 16th of March, 1880, rescinding the contract of January 11th, 1860, is erroneous, and that the decree of the 6th day of November, 1878, is also erroneous and they are set aside and annulled, and that the appellants recover their costs expended in the prosecution of their appeal here. And the court proceeding to enter such decree as should have been rendered by the circuit court, it is adjudged, ordered and decreed, that the contract of the 11th day of January, 1860, be specifically performed and executed. And the cause is remanded to the said circuit court for further proceedings to be had therein to that end. That the appellants, Ferry and Hutchinson, are to hold in undisturbed possession the tract of land called Millers. That the tract of land called Lammermoor be subjected to the payment of the sum of money which the appellee, Clarke, has been compelled to pay to the executor of Thos. Wright, deceased, so far as the same may go, and that the plaintiff below pay to defendants their costs expended in their defence in the said suit in equity in the said circuit court.

DECREE REVERSED.