## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### RISON v. NEWBERRY.

#### FEBRUARY 1st, 1894.

1. SPECIFIC PERFORMANCE—*How granted.*—If equity grants specific perform-
   ance of a contract, it should do so of the contract as the parties made it.
2. IDEM—*When denied—Remedy.*—Where, without good excuse, for a con-
   siderable time, vendor of land refuses to perform the contract on his
   own part, he cannot, after prices have declined, have a decree for spe-
   cific performance, but must be left to his remedy at law.
3. RECISSION—*When denied—Remedy.*—Where there was no mutual mistake,
   no illegality, no disability, no fraud by false representations or wilful
   suppression of such facts as to the subject matter as the party is bound
   to disclose, and no undue influence resulting from confidence or friend-
   ship, equity will not decree a recission of a contract, but will leave the
   plaintiff to his remedy at law.

Appeal from decree of circuit court of Wythe county, ren-
dered February 24, 1893, in a chancery cause wherein Harman
Newberry was complainant and J. F. Rison, acting on behalf
of certain purchasers, Ruffin and Hairston, was defendant.
The decree being adverse to the defendant, he appealed.
Opinion states the case.

*Berkeley & Harrison, Green & Miller* and *Walker & Caldwell,*
for appellant.

*D. S. Pierce, Fulton & Fulton* and *R. G. H. Kean,* for appellee.

LACY, J., delivered the opinion of the court.

This is a suit by Harman Newberry, seeking to have specific performance of a contract in writing, made by said plaintiff with the appellant, J. F. Rison, acting on behalf of certain parties purchasers, Ruffin & Hairston, on the 2d day of April, 1890, agreeing to sell to the said parties three-fourths interest in 700 acres of his 706 acres of land in his Kent's Mill farm, in Wythe county. The said contract sets out that the six acres so reserved are those on which the dwelling is located, which was to be laid off compactly with some frontage on the Norfolk & Western railroad. The price agreed was $100 per acre, or $52,500 for the whole three-fourths interest. Newberry agreed in the said contract to unite with the said purchasers in the formation of a land and improvement company, for the development of the said farm by laying off the said land into town lots and selling the same, and he agreed to take one-fourth—his one-fourth interest reserved—in stock of said company in like manner and kind as shall be issued to the purchasers. The terms of payment were agreed on as follows: $10,000 cash upon the tender of a proper deed, $10,000 in three months thereafter, $7,500 each in six, nine, and twelve months thereafter, and $10,000, being the remainder, in fifteen months from the date of the first payment; the deferred payments to bear six per centum interest, evidenced by negotiable notes, and secured by trust deed upon the property conveyed. Newberry agreed in the said contract to furnish a plot showing the exact quantities and boundaries of the land sold; and there was a further stipulation that the said land company, when formed, should contribute one-half the cost of a railroad survey from the mouth of Reed creek to some point on New river to or near Stuart, Va., when the other half was contributed by others, the whole not to exceed $5,000 in cost. By this contract Newberry was to sell, and the others were to buy three-fourths interest in the said land. The other one-fourth interest was to be contributed by Newberry; and they were together to form a company, one-fourth of the stock to belong

to Newberry and three-fourths of the stock to all others com-
bined, the company to own and develop the whole land, less
the six acres on which the dwelling stood, to be compactly
laid off; and Newberry agreed to furnish a plot showing the
exact quantities and boundaries of the land sold, which, being
done, the six acres not sold would remain compactly laid off or
left to itself. On the other hand, the purchasers were to pay
$10,000 on receipt of a proper deed, which Newberry was to
furnish to them. The contract was executed on the 2d of
April, 1890, as stated. On the next day, D. S. Pierce, attor-
ney at law, made out an abstract of title of the said land at
the instance of Rison, certifying at the conclusion and as a
conclusion that "there are no incumbrances or liens on the
land." On the 8th day of the same month the purchasers of
the three-fourths interest from Newberry paid, in anticipation
of a deed, $10,000 cash to Newberry. But, Newberry not
making a deed as expected, on the 26th of June, 1890, the
purchasers, by counsel, forwarded a deed to Newberry convey-
ing the entire property to the Newberry Land Company—the
name adopted for the new company about to be formed—which
was received on the next day. Newberry objected to the stated
consideration in the deed of $210,000 by the land company in-
stead of $70,000; but it seems that he agreed to this in order to
get the cash payment of $10,000 in advance. When Newberry
received the deed he refused on the next day to execute it, be-
cause he said the exact quantity of land had not been ascer-
tained. On the 16th day of August, 1890, Newberry's counsel
acknowledged the receipt of the deed, and stated that when
he offered the deed to Newberry, and offered it with the metes
and bounds furnished by the purchasers, and proposed to draw
a deed for him to sign and for his wife to sign also, Newberry
said he did not like the way his six acres were laid off, and
"he says he will not sign the deed until that is laid off to suit
him." Four days afterwards Rison replied that the engineers
had been given the contract to go by, and no other instruc-

tions, and he regretted the way the six acres had been laid off
was not satisfactory to Newberry, but that, if Newberry would
please inform them how he wished the six acres laid off, an
endeavor would be made to arrange the plat accordingly.
These directions were never given, and in the deed tendered
January 25, 1893, after decree in the cause, he adopts the way
the six acres are laid off, and says it is satisfactorily laid off.
Newberry refused to make a deed to the company, but pro-
posed to give further time if the purchasers would pay him
yet another $10,000 in cash before receiving the deed.   In
1891 (May 20th), Newberry caused a deed to be made and ten-
dered by his counsel, conveying three-fourths of the land to
the purchasers, which the purchasers refused to accept as a
proper deed, and in August, 1891, Newberry filed his bill for
specific performance of the contract of April, 1890.   The suit
coming on to be heard upon the bill and exhibits, demurrers,
pleas, joint and several answers, and exhibits as cross bills and
answers to same, etc., the depositions of witnesses, etc., and
and upon release deeds by the parties in interest other than
Newberry, John D. Stewart, R. C. Kent, and Mrs. C. W.
Kent, filed in the papers, the circuit court overruled the de-
murrers, and held, and so decided, that Newberry was entitled
to specific performance of his contract of April 2, 1890, upon
his filing in court a deed with general warranty of title, exe-
cuted by himself, conveying to the vendees named in the said
contract of sale three-fourths interest in the land in said con-
tract mentioned, with the reservation of six acres, therein
mentioned, within sixty days from the date of the decree; it
being the opinion of the court that the complainants' title to
the said land is good, and that any possible defect that could
arise because of the infancy of Flora Stuart, who had signed
the deed of release, could be indemnified by a reservation of
the purchase money in the hands of the court for that pur-
pose; decreed for the unpaid purchase money, credited the
same by use and occupation by Newberry, and decreed a sale
of the three-fourths interest if the money was not paid in sixty

days from that time; decreed that each party pay his own cost, and appointed commissioners to make the sale, and authorized $3,000 to be paid into court by the defendants, to be held as indemnity against the claim of Miss Flora Stuart; whereupon the defendants applied for and obtained an appeal to this court.

Enough has been stated chronologically to show the proceedings between the parties pending their negotiations between the execution of the contract and the bringing of this suit. The evidence in the cause shows that the vendor, who now seeks specific performance, did not have the power—was not capable—of making a good deed to the land he sold at the time of the sale, and the decree in the cause procured and insisted on by the vendor himself shows that at that date—nearly three years after the contract was made—he was still unable to make a deed, and the circuit court was unable to cause a good deed to be made, but decreed that the parties defendants should receive a hypothetical deed, good if this young lady so willed hereafter, the court thought. The defendants pointed out the defects in Newberry's title. After long delay on his part, he at last made a deed. It appears plainly enough that for some unexplained reason he desired to get the cash payment in advance of a deed, and, receiving this, he refused to make a deed to the company which he had agreed to form with his vendees, and take the interest of one-fourth. Agreeing subsequently to do this, he then bethought him of the six acres, and found fault with the way it was laid off. Subsequently, when asked to state his objection to this, he waived it, and he put the six acres in the deed in the same manner, which had so long proved an insurmountable difficulty with him when so done by others. But none of these difficulties could be surmounted by him, or were surmountable by others, until the fall in prices known as the "collapse of the boom" had come. Heretofore reluctant—not only reluctant, but stubbornly and steadfastly refusing either to accept a deed tendered to him or to tender one himself—he agreed to survey

and plat the land, received $10,000 before he had any valid claim to it under his contract, and yet, although he had a survey made by his own chosen surveyor, he rejected that, and did not cause any other to be made, and, when the other parties caused a survey and plat to be made by skilled engineers, he objected to that, because six acres were not laid off to suit him in general terms; and, when requested to make known his wishes precisely, that they might be complied with, lets it pass, delays for another year, and then adopts what he had so strenuously and so long objected to. We have shown that he was not capable, and it appears also that he was not ready, willing, eager, or desirous during all that period. His negotiations tended to the effort which finally culminated in the demand of $10,000 more in cash before a deed was made by him. And yet he seeks specific performance at the hands of the court of a contract which he had so long not only neglected, but expressly refused, to comply with on his part, until the circumstances had so changed that the object of the contract could not be carried out. It was not possible to sell lots and stock in a company until a deed could be obtained by the company free from exception. And he himself had agreed to perform on his part something else besides selling and conveying the three-fourths of the land. He plainly agreed to contribute one-fourth of the capital stock to the company and put in his one-fourth interest in the company towards this end. So that by the contract the company was to own the whole land, and he to own one-fourth of the capital stock of the company. But he refused to do this, and asks that the contract which he made be enforced, specifically performed in part—performed only so far as it is favorable to him and his present views—that is, that the other side be made to fully perform on their part and he be fully released on his part; and the circuit court has so decreed. We do not deem it necessary to go into any detail as to the various questions as to the defective title held by Newberry. His delay is enough to disentitle him to specific per-

formance. And the decree of the circuit court, presented and insisted on by the other side, sufficiently shows his inability to comply with his contract to make a good deed to the land free from just exception. The principles which govern a court of equity in passing upon such suits are so well settled, have been so universally adhered to by this court since its foundation, and are so familiar to the profession, that no extended citation of authority is deemed at all necessary. We have over and over again gone over this question, until there is nothing which can be added. Mr. Sugden says (p. 279): "In the language of some of the judges, a party who seeks specific performance must show himself ready, desirous, prompt, and eager." Chancellor Kent said in *St. John* v. *Benedict*, 6 Johns. Ch. 111: "Specific performance cannot be considered a matter of right in either party, but is a matter of discretion in the court; not, indeed, of arbitrary and capricious discretion, depending upon the mere pleasure of the judges, but of that sound and reasonable discretion which governs itself as far as it may by general rules and principles, but which at the same time withholds or grants relief according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties." All application to courts to decree a specific performance must depend upon the circumstances, governed by the established principles of the court. If specific performance would work injustice, or be unreasonable, a party will be left to his action for damages. It is generally essential that a party seeking a specific performance should not have been backward; that he should not have held off until circumstances may have changed; or kept himself aloof so as to enforce or abandon the contract as events might prove most advantageous. The case of *Chilhowie Iron Co.* v. *Gardiner*, 79 Va., 305, is very much in point; *S. V. Railroad Co.* v. *Lewis*, 76 Va., 833; *Haskin* v. *Agricultural Insurance Co.*, 78 Va., 700; *Ferry* v. *Clark*, 77 Va., 397; 2 Lomax Dig., p. 108; *Panill* v. *McKinley*, 9 Gratt., 1; *Robertson* v.

*Hogsheads,* 3 Leigh, 667; 1 Story, Eq., § 693; *Graybill* v. *Brugh,* 89 Va., 895; *Ford* v. *Euker,* 86 Va., 79; *Dinsmore* v. *Lyle,* 87 Va., 391; *Reynolds* v. *Necessary,* 88 Va., 125; *Grizzle* v. *Sutherland,* 88 Va., 584; *Nalle* v. *V. M. Railroad Co.,* 88 Va., 948; Story, Eq. Jur., § 716; 3 Pars. Cont. 301; 2 Tuck. Comm., 426.

It may be observed, upon what has gone before, that the decree appealed from did not decree performance of the contract as made by the parties, but quite a different one. The appellants did not agree to buy a two-thirds interest in the land of Newberry and pay $100 per acre for it simply. There was an agreement between the parties in the contract sought to be specifically performed that they would form a company with Newberry one-fourth owner and contributor. They were to pay three-fourths of the agreed value and Newberry one-fourth, all to go into a company for a specific purpose. The decree complained of not only compels the appellants to take a delayed and a defective title, but compels them to take three-fourths of what they substantially bargained for. It is not proved nor alleged that the appellants ever agreed, directly or indirectly, that the contract thus set up should be their contract; nor is it reasonable to suppose that they would have agreed to pay anything for an undivided interest, great or small, in this land, in order to build a town. It would have remained uncertain under such a contract where their land would lie, whether on the railroad or off of it, whether close to or at the railroad depot or remote from it; and under the court's decree it is matter of uncertainty where the appellants' part of the land will be situated. If the court decrees specific performance at all of a contract, it should do so of the contract which the parties made and the entire contract as made. The court should have decreed, if at all, upon the entire contract, and not upon a part only, and thus left not only the question of the title uncertain and dependent upon future undetermined events, but the location and situs of the land undetermined and unascertained. It cannot be said that the parties them-

selves purchased three-fourths only, because their contract covered effectually the entire tract—three-fourths to be paid for in money, one-fourth to paid for in stock, but the whole to be held (except six acres, to be laid off and designated) under one right; that is, by the company, which both sides agreed to form to this end.

Specific performance is an equitable remedy, which compels the performance of a contract in the precise terms agreed upon, or such a substantial performance as will do justice between the parties under the circumstances of the case. 22 Amer. & Eng. Enc. Law, p. 909. Bouvier defines it as the "actual accomplishment of a contract by a party bound to fulfill it." Burrill defines it: "The performance of a contract in the precise terms agreed upon; strict performance." Mr. Justice Washington, speaking for the Supreme Court of the United States in *Hunt* v. *Rousmanier*, 1 Pet., 14, says: "Equity may compel parties to perform their agreements, when fairly entered into, according to their terms; but it has no power to make agreements for parties, and then compel them to execute the same. The former is a legitimate branch of its jurisdiction, and in its exercise highly beneficial to society. The latter is without its authority, and the exercise of it would not only be a usurpation of power, but would be highly mischievous in its consequences." Equity cannot make or alter a contract for the parties and then execute it. If the contract must be reformed before it can be executed, it can only be reformed in a suit for that purpose, or upon a bill particularly praying for that relief. *Grey* v. *Tubbs*, 43 Cal., 359; *Osborn* v. *Phelps*, 19 Conn., 63. Nor will equity reform a writing to make an agreement of a character different from that which the parties intentionally entered into. *Stoddard* v. *Hart*, 23 N. Y., 556. Under the circumstances of this case, we think Newberry is not entitled to the aid of a court of equity to have his contract specifically executed, but that this court should withhold its relief, and leave him to his action at law. And under the cir-

cumstances of this case, and the changed circumstances, this court ought not to rescind the contract at the instance of the appellants. There are no sufficient grounds alleged nor proven upon which to base a rescission. Fraud is the most frequent ground for rescission, but it cannot be said that Newberry has practiced this upon the appellants. False representations, to be fraudulent, must be a false statement of facts, positively made, not mere matters of erroneous opinions. A concealment to afford ground of rescission for fraud must be a willful suppression of such facts in regard to the subject-matter of the contract as the party making it is bound to disclose. We cannot say that there is any inadequacy of consideration, sufficient to suggest fraud; no undue influence resulting from confidence or friendship. There is no mutual mistake, no illegality, disability, coverture, or infancy. Non-performance to justify rescission must be a total failure of performance. Under all the circumstances of this case, we will refuse specific performance, and deny the prayer for rescission, and reverse the cause, and dismiss the bill, without prejudice to the right of either party to bring his action at law for such damages as he may be advised he has sustained in the premises; that is, the parties will be left to seek their remedy in a court of law. The decree of the circuit court decreeing specific performance is for the reasons stated, erroneous, and must be reversed and annulled.

DECREE REVERSED.