Syllabus.

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## W. W. SALE, C. C. WALTON, JR., AND J. POPE NASH, v. MOSES F. SWANN.

·January 17, 1924.

1. VENDOR AND PURCHASER—*Interest—Possession by Purchaser—Readiness of Vendor to Convey—Case at Bar.*—In the instant case, a suit by a vendor for specific performance, the vendor not only never refused to convey after the contract was executed, but repeatedly offered to do so, and always recognized his legal obligation to do so. There was, it is true, an unreasonable delay in making conveyance, but it was sufficiently explained and a more prompt compliance was waived by the vendees. The vendor was not in personal possession, and the vendees never made any claim or demand upon the vendor for actual possession.

   *Held:* That the rule that a vendor under contract to convey land who refuses to do so is not entitled to interest, had no application to the instant case.

2. VENDOR AND PURCHASER—*Executory Contract of Sale—Equitable Estate of Purchaser.*—When a contract for sale of land is concluded, although it is wholly executory in form, it clothes the purchaser with an equitable estate in the land and the vendor with an equitable ownership ·of the purchase money. This because equity treats that as done which ought to be done by the terms of such a contract, and as the land ought to be conveyed to the vendee and the purchase money transferred to the vendor, equity regards these as done, and treats the vendee as having acquired property in the land, and the vendor as having acquired property in the price.

3. VENDOR AND PURCHASER—*Executory Contract of Sale—Equitable Estate of Vendee—Incidents of the Estate.*—As under an executory contract for the sale of land the vendee has acquired the full equitable estate, he may convey or encumber it, devise it; if he dies intestate it descends to his heirs at law; his wife is entitled to dower in it, and specific performance may be enforced against his heirs at law after his death. In fact, all the incidents of a real ownership belong to it.

4. VENDOR AND PURCHASER—*Executory Contract of Sale—Profits and Interest.*—On an executory sale of land it is the general rule that the profits derived from the land belonging to a vendee in possession,

although the conveyance has not passed; and that the vendor is entitled to interest from the time the purchase money is due. This rule is usually applied where the contract is silent as to interest, and cannot be extended and applied where the parties have by their contract expressly determined their own rights as to interest.

5. SPECIFIC PERFORMANCE—*Interest—Contract Controls.*—Whenever specific performance is justified, and a question raised is covered by the contract, it is the agreement of the parties which controls and is enforced, and there is no occasion or justification for the application of an equitable rule. Thus, where the parties themselves have agreed as to the date from which deferred payments shall bear interest, their agreement determines the question of interest on a suit for specific performance.

6. SPECIFIC PERFORMANCE—*Contract Enforced as Made—Disinclination of Court to Reform Contract.*—Where the right to specific performance is properly established the contract must be enforced as the parties have made it, certainly so far as practicable under the circumstances. This being a positive right, it cannot be withheld in the discretion of the court, unless it has been abandoned by the party entitled to enforce the contract. Courts are not inclined to reform a contract and then to enforce it specifically, because this would be making a new contract for the parties and to require one of the parties to perform a contract which he has not agreed to perform. If material matters are unprovided for in the contract, so that the court cannot say whether the contract has ever been agreed to in essential particulars by the parties, or it cannot say just what they did agree to, the case is not one for specific performance.

7. VENDOR AND PURCHASER—*Executory Contract—Interest.*—Where an executory contract for sale of land provided for the payment of interest upon the deferred payments from a certain date, the unconditional promise of the vendees to pay the interest and execute notes therefor is as binding upon them as was their promise to pay the principal. The notes for the principal, as well as the notes for the interest, together constitute the promised consideration for the promised conveyance. The vendees could only be released from their express promise to pay interest by showing some serious fault or inexcusable delay on the part of the vendor.

8. SPECIFIC PERFORMANCE—*Decree—Conformity to Contract*—The decree should conform to the contract. It cannot add to the contract a promise not made. The court will not make a contract for the parties; but where the exact performance of the contract is impracticable, the plaintiff may sometimes have approximate relief in some other form which will secure to him the substantial advantages of his contract.

Appeal from a decree of the Circuit Court of Goochland county. Decree for complainant. Defendants appeal.

*Amended, affirmed, and remanded.*

The opinion states the case.

*A. Hardin Harris* and *Scott & Buchanan,* for the appellants.

*D. H. Leake, D. M. White, Wm. M. Justis, Jr.,* and *Milton P. Bonifant,* for the appellee.

Prentis, J., delivered the opinion of the court.

Upon a bill filed by the appellee, Swann, for the purpose of enforcing specific performance of the contract of appellants to purchase from him a farm in Goochland county, the court decreed in favor of the vendor, and that decree is here under review. The vendees in their answer conceded the right of the vendor to have specific enforcement of the contract in this language: "Your respondents admit that the complainant has a right to have the said contract and agreement specifically enforced in accordance with its terms, that is to say, that the said Sale, Walton and Nash be required to accept from the complainant a deed conveying to them the said property, and they to execute and deliver to the complainant the notes and deed of trust provided for in the said agreement." This admission, however, is qualified by a denial of the construction which the vendor put upon the contract. The vendor claims that under the contract he is entitled to interest on the deferred installments from December 16, 1919, the date fixed by the contract, while the vendees claim that pos-

session of the property was never delivered to them, and that, therefore, they should not be required to pay interest upon the purchase money until the date of delivery of the deed and possession of the property.

On April 27, 1920, when this controversy arose, only the interest between December 16, 1919, and April 27, 1920, was involved, but now the claim of the vendees is that interest has not yet begun to accrue. The issue presented then is whether or not the vendees are liable for interest from the 16th day of December, 1919.

This leads us first to the contract. This is dated December 5, 1919; the price of the property is thereby fixed at $16,500.00 net to Swann, and then follows this language therein:

"Five hundred dollars is to be paid on the 16th day of December, 1919, on which day the party of the first part is to execute to the parties of the second part a general warranty deed for the said property, and the parties of the second part are to execute and deliver to the party of the first part a deed of trust to secure notes amounting to sixteen thousand dollars, which said notes shall be payable at three years after date, together with interest notes semiannually on the whole of said amount, and with a proviso in deed of trust that if default is made in the payment of any interest note the whole sum shall become due and property may be sold to satisfy same."

It also provides that the vendees may associate an additional purchaser with them, if they so desire, that the notes for the deferred payments shall be made for half thereof, if there are two purchasers, or for one-third thereof, if there are three; that the vendees, if they desire to do so, may have the land conveyed to a corporation; and that:

"If parties of second part desire to have said land

conveyed to a corporation they may require same to be done, provided that in that event the corporation shall execute its notes as hereinbefore provided, in which event the corporation shall execute its deed of trust securing the purchase money as aforesaid, and the parties of the second part and their associate, if one, shall endorse their respective proportion of said notes, that is, if parties of second part have no associate, each shall endorse one-half of said notes, if an associate, each shall endorse one-third of said notes."

The argument for appellants is rested chiefly upon the claim that the vendor refused to comply with his contract to convey and retained possession of the land. The evidence fails to sustain the claim that the vendor refused to convey. It shows that after the contract of December 5th he invariably recognized his obligation to do so. The date fixed by the contract for compliance was December 16th following, and on that date compliance was by mutual consent postponed until January 2, 1920. The obligations of the contract were not, however, changed in any respect, the delay was by mutual consent of the parties, which was so expressed in the written receipt given by the vendor to the vendees for $500.00 of the purchase money paid on that date. The reason the vendor desired postponement was because of the absence of his attorney, whom he desired to inspect and advise him as to the form of the deeds. The reason the vendees desired a postponement was because they proposed to exercise their option to have the land conveyed to a corporation and they desired to delay the organization of such a corporation until after January 1, 1920, so as to escape the payment of certain corporate taxes for 1919.

On January 2, 1920, Swann failed to meet his engagement, though the vendees were ready to complete

the transaction on that date.    His absence and failure
were shortly thereafter explained, if not justified, by
his confinement to his home in the country by a sudden
attack of sickness.    He thus testified as to this:

"I thought for some time I would soon be out and
would come back to Richmond, but I didn't get better,
and about the 20th of January I wrote General Sale
telling him that (apparently quoting) if for any reason
you gentlemen want this deed before I come, I will
send Mr. Bonifant (his counsel) in and get the papers
and he would bring them in and close the transaction."·
(Words in brackets supplied.)

The letter referred to was thus replied to by one of
the vendees:

"RICHMOND, VA., January 30, 1920.

"MR. MOSES F. SWANN,
    "Clayville, Virginia.

"DEAR MR. SWANN: .

"As I have been staying in town, your letter of Jan-
uary 20th addressed to me at Vinita has only just
reached me here.    I regret very much to hear that you
have continued ill, and I sincerely hope by the time you
receive this that you will have greatly improved.    How-
ever, in these days of influenza, I think it is important
to take no chances, so do not come out too soon.

"We have been ready for some time to settle up the
Goat Hill matter, but would prefer waiting until you
are able to come to Richmond, as it would be more
satisfactory to discuss all the details with you in refer-
ence to notes, endorsements, etc., before the papers are
signed.    I will be glad if you will notify me a day or
two in advance, as soon as you are able to come down,
so we can arrange to be here to close the matter.

"I am very sorry to hear Mr. Justis is unable to be at his office. I called there several times before receiving your letter and was told he was out of the city.

"Hoping you are getting better fast, and assuring you of my best wishes, I remain

> "Yours sincerely,
> "W. W. SALE."

This correspondence needs neither elaboration nor explanation, for it plainly shows that the time fixed for the conveyance was not considered by either of the parties as of the essence of this contract; that the vendor then acknowledged his obligation, and offered to sign the deed; and that the vendees not only waived an immediate compliance with the contract as of January 2, 1920, or on January 20, 1920, as offered, but preferred to wait until the vendor should recover and be able to come to Richmond, as it would be more satisfactory to them to discuss details with him. This waiver by the vendees was never thereafter withdrawn or modified, though several letters were written by the agent who negotiated the sale, complaining to the vendor of his delay. Probably in response to this insistence on the part of the agent, Swann in February again recognized his contract obligation by sending his attorney to Lancaster, the agent, who was in touch with the vendees, to inform them that he was willing to execute the deed, if they would send it to him, but that he wished the notes for the deferred payments made payable to the vendee corporation and endorsed to him, instead of being made directly to him as payee. The result of that discussion was, as Lancaster testified, that they thought it best not to send the papers to him with the desired change. They were willing, he testifies, to

send the papers up in accordance with the contract, but not with that change. Here again is another recognition of his obligation, and of the vendees' immediate right to a conveyance; and it is observed that the change which Swann suggested would neither have changed nor increased the contract obligations of either party.

Then again he recognized the vendees as the true owners of the property and his obligation to convey it to them by writing this letter:

"Michaux, Va., March 13, 1920.

"General W. W. Sale.

"Dear Sir:

"I imagine that you are not in the city this week and perhaps did not get my letter. I would thank you to answer as soon as possible that I may know what to do about the cattle. I find myself some better to-day after being sick for a week owing to weather conditions I reckon.

"Would you and your friends care to consider $3,000.00 profit on Goat Hill considering cost price $17,000.00. Or in other words would you take $20,000.00. I have been talking to a party who would perhaps buy, and if you would feel inclined to consider the price I would be glad to know within a few days and would like to have ten days option.

"I hope I may be able to come down within ten days. I would be glad for reply as early as possible. With kind regards, I am

"Most truly, etc.
"M. F. Swann."

Having twice offered to sign the deed if sent to him, and having been told that they preferred to wait until he could conveniently come to Richmond so as to arrange certain details as to the notes for the deferred purchase money, he in this letter suggested the possibility of securing a new purchaser at a profit of $3,000.00, not to him but to them.

[1] A recital of these undisputed facts demonstrates that the rule so confidently relied on by .the vendees, namely, that a vendor under contract to convey land, who refuses to do so, is not entitled to interest, has no application here. This vendor not only never refused to convey after this contract was executed, but repeatedly offered to do so, and always recognized his legal obligation to do so. There was, it is true, an unreasonable delay, but it is sufficiently explained and a more prompt compliance was waived by the vendees.

One of the cases most confidently relied on by the appellants is *White* v. *Dobson*, 17 Gratt. (58 Va.) 262. In that case it was held that when a vendor of land has notified the purchaser that he will not comply with his contract, and in a suit for specific performance by the vendee in which the vendor is required to convey, the vendee is entitled to have an accounting of rents, issues and profits of the land and to have them set off against the purchase money, if he so elects, or at his option, if he waives an accounting of the profits and leaves them with the vendor, he shall not be required to pay interest on the purchase money. That case is distinguished from this in that the court finds that the vendor there had notified the vendee of his intention not to perform his contract, whereas here there is nothing to support such a finding, however justifiable the criticism of his delay.

So of another case, so cited and, relied on, *King* v.

*Ruckman*, 24 N. J. Eq. 560.    There, too, it is found that the vendor refused to convey the property and kept the vendee out of possession, and the court finds this to be the applicable rule under such circumstances: "The rule which I deem apt in this instance is thus expressed by Lord St. Leonards, viz:   'Where interest is more in amount than rents and profits, and it is clearly made out that the delay was occasioned by the vendor, to give effect to the general rule would be to enable the vendor to profit by his own wrong; and the court, therefore, gives the vendor no interest, but leaves him in the possession of the interim rents and profits.'    2 Sug. V. & P. (8th Amer. ed.), p. 322, sec. 24.    The Vice-chancellor has applied this rule to the present case, and the questions are, as to the existence of the rule and the propriety of its application.

"As to the first question, with regard to the existence of the rule, as I have already said, I do not know that its prevalence whenever applicable, has, on any occasion, either in a dictum or judgment, been challenged or gainsayed.    That the vendee, if kept out of possession by the vendor, would not be charged with interest, was referred to, as a settled rule, by Lord Hardwicke, in the case of *Blount* v. *Blount*, 3 Atk. 636, and from that time to the present, this rule can be traced in constant use through a long line of decisions."

The determining features which appear in the case cited are, that the vendor refused to convey, and excluded the vendee from possession, but neither of these circumstances appear here.

The truth as to possession of the land here involved is that it was occupied by two negro tenants, that the vendor was not in personal possession, and that the vendees never made any claim or demand upon the vendor for actual possession.    There is no evidence

showing that either considered this of much conse-
quence, and there is no indication in the record of the
amount of the rents and profits thereof, if any.

[2, 3] A recurrence to some primary equitable prin-
ciples may be helpful.

When such a contract is concluded, although it is
wholly executory in form, it clothes the purchaser
with an equitable estate in the land and the vendor
with an equitable ownership of the purchase money.
This because equity treats that as done which ought to
be done by the terms of such a contract, and as the
land ought to be conveyed to the vendee and the pur-
chase money transferred to the vendor, equity regards
these as done, and treats the vendee as having acquired
property in the land, and the vendor as having acquired
property in the price. It follows that as the vendee
has thus acquired the full equitable estate, he may con-
vey or encumber it, devise it; if he dies intestate it de-
scends to his heirs at law; his wife is entitled to dower in
it, and specific performance may be enforced against
his heirs at law after his death. In fact, all the inci-
dents of a real ownership belong to it. 1 Pom. Eq.
Jur. (4th ed.), sec. 368.

[4, 5] The general rule, which in the absence of ex-
press contract gives the profits to a vendee in possession,
although the conveyance has not passed, and interest
to the vendor from the time the purchase money is due,
is fully recognized by this court. *Barnett* v. *Cloyd's*
*Ex'or*, 125 Va. 546, 100 S. E. 674; *Cohen* v. *Jenkins*,.
125 Va. 635, 100 S. E. 678. In such cases, however,.
usually the contract involved is silent as to interest,.
and the relief is adjusted upon equitable principles.
We do not understand, however, that this rule can be
extended and applied to determine such a question
when the parties have by their contract expressly

determined their own rights as to interest. A distinguishing feature of this case then is that here the parties themselves have agreed that the deferred payments shall bear interest from December 16, 1919. Whenever specific performance is justified, and the question raised is covered by the contract, it is the agreement of the parties which controls and is enforced. In such a case there is no occasion or justification for the application of an equitable rule. 27 R. C. L. 538, sec. 271.

[6] Even without the concession of the vendees, it is perfectly clear here that the vendor is entitled to specific performance of this contract, and it appears to be a settled rule that when such right is properly established it must be enforced as the parties have made it, certainly so far as practicable under the circumstances. This being a positive right it cannot be withheld in the discretion of the court, unless it has been abandoned by the party entitled to enforce the contract. Courts are not inclined to reform a contract and then to enforce it specifically, because this would be making a new contract for the parties and to require one of the parties to perform a contract which he has not agreed to perform. If material matters are unprovided for in the contract, so that the court cannot say whether the contract has ever been agreed to in essential particulars, or it cannot say just what they did agree to, the case is not one for specific performance.

[7, 8] The contract here in terms provides for the payment of interest upon the deferred payments from December 16, 1919, and the unconditional promise of the vendees to pay the interest and execute notes therefor is as binding upon them as is their promise to pay the principal. The notes for the principal, as well as the notes for the interest, together constitute the promised consideration for the promised conveyance.

The principle applicable in such cases is thus stated in 36 Cyc. at p. 789: "The decree should conform to the contract. It cannot add to the contract a promise not made. The court will not make a contract for the parties; but where the exact performance of the contract is impracticable, the plaintiff may sometimes have approximate relief in some other form which will secure to him the substantial advantages of his contract."

For this principle there is abundant authority. *Rison v. Newberry,* 90 Va. 521, 18 S. E. 916; *Vickers* v. *Hand,* 26 Beavan, 634; *Grey* v. *Tubbs,* 43 Cal. 364; *Miller* v. *Jones,* 68 W. Va. 526, 71 S. E. 248, 36 L. R. A. (N. S.) 408; *Harper* v. *Battle,* 180 N. C. 375, 104 S. E. 658, 20 A. L. R. 360; 25 R. C. L., sec. 166; 4 Pom. Eq. Jur. (4th ed.), sec. 1404.

In Pomeroy's Contracts Specific Performance (2d ed.), p. 511, sec. 431, he thus treats this phase of the question:

"These general rules are, of course, liable to be modified if the contract contains express provisions concerning the payment of interest. Such provisions will govern, unless the vendor by his own unreasonable delay forfeits his right to claim the interest as stipulated to be paid. Where the contract stipulates that interest is to be paid by the vendee 'from whatever cause the delay may arise,' or words to that effect, and the delay is caused by the vendor's fraud or willful neglect, then if the interest exceeds the rents and profits, the vendor will be left in the enjoyment of the rents and profits, while the vendee will be excused from payment of interest until a good title is shown; from and after that time the vendee must pay the interest and receive the rents and profits. But under the same form of contract if the delay arises from the defective title, or the difficulty of making out a good title, without any fraud or willful neglect of the vendor; the pur-

chaser's interest must be paid in pursuance of the agreement."

The vendees here, then, can only be released from their express promise to pay interest from the date prescribed in the contract by showing some serious fault or inexcusable delay on the part of the vendor. Here, as we have shown, there was no delay, except that expressly agreed to, together with that caused by the refusal of the vendees to accede to the vendor's two subsequent requests that the deed be sent to him for execution.

Under the circumstances here shown, the vendees are entitled to the rents and profits accruing after December 16, 1919, and the vendor is entitled to the interest from that date because the contract so expressly requires. That the vendees so understood their contract is shown by the uncontradicted testimony, that when the parties met on December 16th, and agreed to the delay until January 2nd, one of the vendees said that interest would start from that date, December 16, 1919.

When we come to consider the relief granted, we observe that since the decree of the trial court, the date for maturity of the notes for the deferred payments has passed and the whole of the purchase money is now due, with interest, so that the relief heretofore granted is now neither applicable nor complete. We will, therefore, amend the decree by this addition: If the purchase money with interest now past due is promptly paid by the vendees, their deed from the vendor shall be delivered, but if such settlement is not so made, the trial court will direct the land to be sold at the cost and risk of the vendees for the satisfaction of their indebtedness, and the cause is therefore remanded to the trial court for this and such further relief to the parties as may be proper to enforce the contract.

*Amended, affirmed, and remanded.*