## Richmond

WALTER G. VERLING AND TERESA VERLING V. FRED H. QUARLES.

September 2, 1976.

Record No. 751099.

Present, All the Justices.

*Robert H. Blodinger*, for appellants.

*Paul M. Peatross, Jr.*, for appellee.

Per Curiam.

Fred H. Quarles filed his bill of complaint in the court below praying that Walter G. Verling and Teresa Verling, husband and wife, be required specifically to perform a written agreement for the sale of real estate. The Verlings answered, denied the allegations of the bill and claimed, *inter alia*, that the alleged sales agreement was not duly executed by Mrs. Verling; that it lacked mutuality of consideration; that it was vague, ambiguous, uncertain and unclear; and that it had in fact been terminated by Quarles.

The sales contract, dated March 22, 1971, bears the signatures of appellants and appellee, and contains numerous interlineations and initials. By the terms thereof the Verlings, owners of an apartment building in Charlottesville, identified as "330 15th Street N. W.", agreed to sell and convey the property to Quarles for $60,000. The terms of sale were stipulated to be "$32,000 cash at closing See note attached special conditions". The note, in pertinent part, reads:

"1. This contract made subject to Vendee obtaining 1st mortgage on said property in amount of $32,000 payable in equal monthly payments over a period of 240 months or more, with interest not to exceed 7 1/2%.

"2. Vendor to accept Vendee's note in the amount of $28,000 payable $186.29 per month for 30 years to include interest at rate of 7% per annum. Full rights of anticipation."

Soon after the contract was executed the Verlings were advised by counsel that its validity was in doubt, and that they had "a tax problem". Appellants were told that no second lien was provided for in the contract for the deferred purchase price due them, and that Quarles was under no legal obligation to do anything in connection with the sale or with obtaining a first mortgage. They were further told that the contract was with "Fred H. Quarles or assigns", and that Quarles could assign the contract to a person who was not financially responsible.

The record shows that on or about May 15, 1971, Quarles received a commitment from the First Federal Savings and Loan Association of Richmond, Virginia to make him a loan in the amount of $32,000 on the property, the loan to be repayable over a period of twenty years, with interest at 8 1/2%. Quarles then advised the Verlings that he was ready to close the purchase. The appellants declined to convey the property to appellee who thereafter filed suit for specific performance.

The trial court, on May 16, 1975, entered a final decree requiring the Verlings "specifically to perform with certain conditions to be added by the Court, particularly with regard to the security of the unpaid portion of the purchase price". The court gave the Verlings 20 days within which to exercise the option of either performing or paying damages to Quarles in an amount to be thereafter determined. It decreed that should appellants elect to perform, Quarles was to be put on terms "to place no more than $32,000.00 first mortgage against the property in order to raise the down-payment, said mortgage to be obtained at the current rate of interest, and the balance of the purchase price which is the sum of Twenty-eight Thousand and no/100ths Dollars ($28,000.00), evidenced by one note, is to be secured by a deferred purchase money second lien deed of trust bearing interest at the rate of seven percent (7%) amortized over a period of thirty (30) years. . .". The court further directed that if the appellants made

no election, they were "specifically to perform". The appellants declined to perform and appealed.

It is unnecessary for us to consider the numerous assignments of error made by appellants, or to review the voluminous testimony of the parties and their witnesses. In *Huselton* v. *Roop*, 215 Va. 127, 128, 207 S.E.2d 826, 827 (1974), we said:

> " 'Equity cannot make or alter a contract for the parties and then execute it. If the contract must be reformed before it can be executed, it can only be reformed in a suit for that purpose. . . .' *Rison* v. *Newberry*, 90 Va. 513, 521, 18 S.E. 916, 919 (1894). *See Sale* v. *Swann*, 138 Va. 198, 209, 120 S.E. 870, 873 (1924).
> " '[W]hen a court of equity grants specific performance [of a contract for the sale of real estate] it must, substantially at least, conform to the contract made by the parties; and a material departure from such terms to the detriment of the purchaser constitutes reversible error.' *Dickenson* v. *Scott*, 119 Va. 497, 498, 89 S.E. 869, 870 (1916)."

In the instant case it is clear that, in decreeing specific performance, the chancellor has enforced a contract differing materially from that alleged. The contract enforced by the court is not the contract the parties executed on March 22, 1971. That contract called for a first lien repayable over a period of 240 months or more, *with interest not to exceed 7 1/2%*. Appellee's commitment from the First Federal Savings and Loan Association required the payment of interest at a 8 1/2% rate. The additional 1% interest amounts to a substantial sum over a period of 20 years. The decree appealed from permits Quarles to place a first mortgage on the Verling property "at the current rate of interest". This rate could well be in excess of the 7 1/2% interest called for by the contract. It is a matter of common knowledge that the rate of interest provided for in an obligation secured by a first lien on real property affects materially the worth of the second lien, and the marketability of the property in the event of a subsequent sale thereof, whether under foreclosure or privately.

Further, the court has decreed the enforcement of a contract different from that which Quarles claims is the contract of the parties. Quarles says that the contract did not provide that the Verlings were to have a second lien on the property for $28,000, and that only his open and unsecured note was to be given the sellers for the deferred purchase price. Clearly, the trial court concluded either that, although

not stated in the contract, the parties contemplated that Verling would have a second lien on the property for $28,000, or that if such an arrangement was not contemplated, it would be unconscionable for performance to be enforced without such a lien.

In his original bill Quarles prayed for specific performance and that the Verlings be ordered to pay him damages. In his amended bill he asked only for specific performance and general relief. In his brief Quarles requested affirmation of the decree of the lower court, or, in the alternative, specific performance without the requirement of a second lien deed of trust and that he be awarded an accounting for lost rents and profits.

Applying well established principles, and assuming, but not deciding, the validity of the sales contract, we conclude that the trial court made a material departure from the terms of the contract and, in effect, made an agreement for the parties and then sought to compel them to execute it. While the agreement it made may be a more equitable one, it is not the agreement either party claims was made. A careful consideration of the evidence and exhibits fails to convince us that this is a proper case in which the powers of a court of equity should be invoked to decree specific performance.

Accordingly, the decree of the lower court is reversed and appellee's bill is dismissed.

*Reversed and dismissed.*