## CIRCUIT COURT OF THE CITY OF STAUNTON

H. Braxton Green

v.

Mayo Cabell

### July 5, 1977

### Case No. (Chancery) 2761

By JUDGE ROSCOE B. STEPHENSON, JR.

This is a rather difficult and novel case. Able arguments have been advanced by counsel for each party. After giving the matter careful and deliberate consideration, however, I conclude that, for the reasons stated herein, Cabell should prevail.

We are concerned with what are known in the insurance business as "expirations." They are customer accounts evidenced by files containing a copy of the insurance policy and showing the name and address of the insured (customer), the coverage, the expiration date of the policy, the premium, and perhaps other information concerning the customer's insurance requirements. This information enables an insurance agent to contact the insured before the existing policy expires and places him in a favorable position to retain that customer's insurance business. That they have great value to an *existing and ongoing* insurance agency cannot be successfully disputed. If an insurance business, or a percentage thereof, is sold, expirations constitute the principal asset involved in the sale. This is so because they represent the business which has been generated by the agency. Expirations are in the nature of "good will" of an insurance business. During the existence of the partnership known as Cabell and Green, each partner owned one-half of the assets of the partnership, including the expirations. The problem presented, however, relates to the status of expirations where a partnership

is terminated and dissolved and each partner has continued in the insurance business in competition with the other. There is authority that expirations and/or good will have no value once a business is dissolved. *Dyer v. Shore*, 20 R.I. 259, 38 A. 498 (1897); *Thursby v. Kirby*, 12 N.Y.S.2d 279, 17 Misc. 310 (1939).

In *Dyer* the court said:

> Upon the dissolution of the firm, both partners had the right to access to the books and to the list of customers of the old firm. Both had the right to compete for the continuance of their business with the old customers. The respondent Sweet, knowing that Shore had this connection with a large line of customers, paid him a sum of money to be admitted into partnership with him. It does not appear that anything more than this was done. No exclusive right to the old business was conveyed. The complainant could have made a similar arrangement without infringing any right of his former partner, Shore. One partner had as much right to use the name of the old firm as the other.

In the present case, both Green and Cabell had, and for that matter still have, the right to access to all the records of the former partnership, including the expirations. Green conceded that Cabell has consistently taken that position since the partnership terminated. (See Transcript No. 3, pp. 5-8, Transcript No. 1, p. 61).

In *Thursby*, which involved the dissolution of a partnership of insurance adjusters, one partner endeavored to offset the value of goodwill against his liability in a proceeding for an accounting. In denying the offset the court said:

> Here, however, both parties were free to solicit customers and obtain business individually. With competition continuing, goodwill in the technical sense of the word ceased. The fractional advantage of retaining only the old stand and custody of old files, to which defendant also had access, is not goodwill in a legal sense. The value of this advantage

is illusive and uncertain, and it is questionable whether defendant is entitled to any benefit from it, even if a value could be placed upon it. It is true that an effort might have been made to sell the business as a whole for the benefit of the partnership, and thus obtain the advantage of any goodwill the business might have possessed. This could not have been done without the result of virtually barring the two parties from continuing business with the old customers. This was not within the intent of the partners. 12 N.Y.S.2d at 282.

The court concludes, therefore, that, when the business known as Cabell and Green terminated, its expirations (customer accounts), for all practical purposes, ceased to be a valuable asset.

If we were to assume, however, that the expirations had some value when the business terminated, what would be the rights of the former partners with respect to them? In order to answer this question, we must first look at the applicable law respecting dissolution of a partnership, and, next, we must determine if the partnership agreement, itself, affects that law.

Since each partner owned one-half of all the partnership's assets, it seems apparent that, absent a partnership provision to the contrary, the Uniform Partnership Act requires that all assets, including expirations, be divided between the former partners equally.

It would be easy to divide these customer files in kind so that each former partner received an equal amount of potential insurance business. As soon as such a division has been accomplished, however, the actual business derived therefrom would be unequal. Not only is each former partner free to seek the business of any or all of the customers of the former partnership, but it is quite obvious that these customers would demand that the former partner who had previously serviced their account continue to do so. So, as a practical matter, a division in kind would be meaningless.

Green does not seek such a division, anyhow; and his access to these records has never been questioned by Cabell. Since he has not sued for a division in kind, further consideration of this proposition is unwarranted.

Green contends, on the other hand, that, since Cabell received a larger percentage of the expirations, there should be a compensating payment to him for the difference. He further suggests that the amount of compensation due him should be determined by using the formula as set forth in Paragraph 12 of the partnership agreement. Resolution of this contention requires a construction of the partnership agreement.

Paragraph 12 of the agreement relates to *"Voluntary Withdrawal of Partner."* It provides that if a partner voluntarily withdraws from the partnership he shall offer to sell his interest in the partnership to the remaining partner. It further provides that the price shall be:

> one and one-half times the average annual gross commissions. . . earned by the partnership for the preceding three full fiscal years, plus the amount. . . of all cash. . . and the book value of all accounts and notes receivable, prepaid expenses, fixed assets. . . life insurance and other securities.

Paragraph 12 further states that "[t]he portion of the sales price computed with reference to average annual gross commission shall represent the agreed value of the withdrawing partner's share of the firm's good will." It further provides that for a period of five years the withdrawing partner shall not engage in the insurance business within a radius of 50 miles from either Staunton or Charlottesville. And finally (and this is most significant), if the withdrawing partner's offer is not accepted by the remaining partner, "the partnership shall be liquidated and there shall be no restriction on the future activity of either partner."

Paragraph 12, therefore, gives to the remaining partner the option of either buying the expirations in accordance with the stated formula (in which event the withdrawing partner agrees not to compete), or rejecting the offer to sell (in which event "the partnership shall be liquidated and there shall be no restriction on the future activity of either partner"). This clearly indicates that in the event of liquidation (which is the situation in the present case) the formula is not applied with

respect to expirations and free competition shall exist between the former partners.

Under the agreement the formula is also applied when a partner becomes disabled (Paragraph 13) or dies (Paragraph 14). It is also the basis for the computation (one-half the price) used in the event of expulsion (Paragraph 17).

In the present case, we are concerned with a voluntary termination of the partnership. The partnership is dissolved and liquidated. Each party has the right to continue in the insurance business in direct competition with the other. In this posture, should the formula be applied by the court in favor of one partner and against the other with respect to the expirations absent a clear provision to do so in the agreement? I think not, and no such provision is found in the agreement. To the contrary, Paragraph 18 of the agreement which relates directly to "*Voluntary Termination*" provides in part that:

> In the carrying out of such liquidation, good faith consideration shall be given in the allocation of continuing customer accounts to the partners to the desires of such customers and the fairness of such allocations to the partners in light of their past relationships with such customers.

Paragraph 18, for obvious and very good reasons, does not say that any disparity resulting to either partner shall require a compensating adjustment in favor of the partner receiving the smaller amount of customer accounts in accordance with the formula stated in Paragraph 12. If such had been the intention of the parties, they should have so provided. Instead, Paragraph 18 expressly provided for the method to be used to allocate these accounts to the partners.

Green argues that the result is inequitable to him, but he apparently overlooks the injustice which would be done to Cabell if the court forced a payment formula upon him which, under the terms of the agreement, he had the right and option to reject. It is the function of the court to construe a contract, not to make or alter the contract the parties themselves have made. This is so even if the court's notion of what the contract should

be might make for fairer results. *Ames* v. *American National Bank*, 163 Va. 1, 176 S.E. 204 (1934); *Verling* v. *Quarles*, 217 Va. 188, 227 S.E.2d 684 (1976).

Construing the agreement as a whole in the light of the peculiar status of expirations upon a dissolution of the partnership (i.e., with each party having free access to the information in all of the customer accounts of the former partnership and each free to compete against the other), I must conclude and hold that the division made by the parties of the expirations comports with the intention of the parties and that the accounting requested by Green should be denied.