**PUBLISHED**

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### No. 21-1614

THE KAY COMPANY, LLC; DIANE DILE GREEN, individually and attorney-in-fact for the heirs of Luther E. Kile; THE H. A. ROBSON TRUST; EDWIN N. VINSON, beneficiary and trustee of the H.A. Robson Trust; DAVID H. DAUGHERTY, trustee of the H.A. Robson Trust; MARY BLAIR V. CHAPUISAT, beneficiary of the H.A. Robson Trust; H. DOTSON CATHER, trustee of Diana Goff Cather Trusts; CLYDE EMERSON MCCLUNG, individually; JAMES E. HAMRIC, III, individually,

          Plaintiffs,

    and

MARCUS HUEY; ESTATE OF JAMES ROBERT HUEY; KENNETH HUEY; RICHARD HUEY; BARBARA HUEY; JOHN HUEY; LAURA MAYNARD, executrix of the estate of Jean Gould, deceased; WEST-GRUBB, LLC; STONEY MEADOWS, LLC; SARABETH LAMM; JAMES G. WEST, LLC; CAPTAIN PERRY, LLC; JENNIE G. WEST, LLC; JENNIE'S LEGACY, INC.; J.B. WEST, LLC; BRENT LAMBIOTTE; CHARLES LAMBIOTTE; JEAN LAMBIOTTE PIGGOTT,

          Intervenors/Plaintiffs – Appellees,

    v.

EQUITABLE PRODUCTION COMPANY, a qualified Pennsylvania Corporation; EQUITABLE RESOURCES, INC., a Pennsylvania corporation,

          Defendants – Appellants,

    and

STATOIL NORTH AMERICA, INC., a Delaware corporation; STATOIL ENERGY, INC., a Virginia corporation; STATOIL ENERGY HOLDINGS, INC., a Delaware corporation; ASHLAND OIL, INC., a Kentucky corporation,

Defendants.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Joseph R. Goodwin, District Judge.  (2:06-cv-00612)

Argued:  December 8, 2021                                  Decided:  March 1, 2022

Before GREGORY, Chief Judge, and TRAXLER and FLOYD, Senior Circuit Judges.

Affirmed by published opinion.  Senior Judge Floyd wrote the opinion in which Chief Judge Gregory and Senior Judge Traxler joined.

**ARGUED:**   David Dehoney, MCKOOL SMITH P.C., New York, New York, for Appellants.   James Robert Russell, SHUMAN MCCUSKEY & SLICER PLLC, Morgantown, West Virginia, for Appellees.  **ON BRIEF:** Lauren W. Varnado, MCKOOL SMITH P.C., Houston, Texas; Jennifer J. Hicks, BABST CALLAND, Charleston, West Virginia, for Appellants.  John F. McCuskey, SHUMAN MCCUSKEY SLICER PLLC, Charleston, West Virginia, for Appellees.

FLOYD, Senior Circuit Judge:

This appeal involves a motion to enforce the final judgment and final order in a class action settlement made in the district court by the defendant in the class action, Appellants EQT Production Company and Equitable Resources, Inc., (collectively, EQT), and class members and Appellees, the "Huey Plaintiffs." Three years after entry of the final judgment and final order, the Huey Plaintiffs filed a lawsuit in the Circuit Court of Wetzel County, West Virginia (the Wetzel County litigation) against EQT, alleging that EQT trespassed on their mineral estate in violation of West Virginia statutory and common law. The district court denied the motion to enforce the final judgment and final order and declined to enjoin the Wetzel County litigation. EQT appealed.

We hold that the district court did not err in declining to enjoin the Wetzel County litigation, and, thus, affirm the court's denial of EQT's motion to enforce the final judgment order and final order.

I.

A.

In August 2006, the district court began presiding over a complex class action in which class plaintiffs filed a complaint against EQT. The named plaintiffs sought to represent all West Virginia residents and others who had entered into or were beneficiaries of oil or gas leases with EQT. EQT was involved in the exploration, production, and sale of natural gas within West Virginia and had the responsibility to pay the class plaintiffs a royalty on the gas produced from the wells on the leases in accordance with the terms of

3

their respective leases. Class plaintiffs sought, among other things, "damages for improper deduction of post-production expenses from their royalty payments and damages for breach of lease agreements, breach of fiduciary duty, fraud, violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-6-101, et seq.), violation of the flat rate royalty statute (W. Va. Code § 22-6-8), and punitive damages, *all related to the improper payment of royalties*." J.A. 74 (emphasis added). The Huey Plaintiffs are members of the Flat Rate subclass in this class action.[*]

On April 28, 2010, the district court approved a class action settlement of all claims against EQT. As part of the Second Amended Settlement Agreement, which the district court adopted as the Final Settlement Agreement (the Agreement), the district court approved a provision "releasing [EQT] from future claims by Class Members from any and all *royalty claims* through the settlement date of December 8, 2008." J.A. 142 (emphasis in the original).

The Agreement defines royalty claims as:

Those claims asserted by the Plaintiff Class Representatives in this Action, individually and as representatives of the Class, including claims for

---

[*] "Flat Rate Subclass" means all persons who have entered into Flat Rate Leases with EPC or its predecessors on lands lying within the boundaries of the State of West Virginia and received or were due to receive royalty payments from EPC or its predecessors during the Compensation Period. The Flat Rate Subclass also includes all persons who have or had oil, gas, or other hydrocarbon production from Flat Rate Wells on lands lying within the boundaries of the State of West Virginia and have received or are due royalty payments from EPC or its predecessors during the Compensation Period. The Flat Rate Subclass also includes all Lessors who have received royalty payments under Flat Rate Leases by virtue of pooling or unitization of their leased acreage.

J.A. 81.

4

improper royalty payments, improper deductions, improper measurement, improper accounting for natural gas liquids, improper sales prices, breach of lease agreements, breach of fiduciary duty, fraud, violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code § 46A-6-101, et seq.), violation of the flat rate royalty statute (W. Va. Code § 22-6-8), and punitive damages, *all based upon the failure to pay proper royalty*.

J.A. 89 (emphasis added).

The release was also temporally restricted to "the period covered by this settlement." J.A. 159. The Agreement defines the relevant "Compensation Period" as being "from February 1, 2000, to the Effective Date," J.A. 79, which was "the date by which this Agreement has been signed by all Parties hereto," J.A. 80. The Agreement was effective on or about December 8, 2008.

To obtain settlement funds, participating class members were required to submit a claim form. The claim form relevant here, the "Flat Rate Claim Form," notified class members that by accepting the settlement, they would "release [ ] [EQT] from any and all Royalty Claims through the Effective Date" and "warrant [their] Ownership Period in the Covered Lease during the Compensation Period." J.A. 101. That is, "[a]s consideration for this settlement," participating class members "REPRESENT[ED] and WARRANT[ED] that [they were] the owner[s] of the interest in the lease . . . and [were] entitled to the Settlement Payment set for[th] herein." J.A. 102. Further, participating class members who held Flat Rate Leases were notified that they "cannot seek forfeiture of their Flat Rate Leases after entry of Final Order and Judgment in this civil action." J.A. 102. As members of the Flat Rate Lease subclass, the Huey Plaintiffs submitted a Flat Rate Claim Form and accepted settlement funds as part of the district court class action.

5

Additionally, as part of the final judgment in this case, the district court "BAR[RED] AND ENJOIN[ED] all Class Members from asserting Royalty Claims arising from the period covered by this settlement"; "ORDER[ED] that the Class Members' Royalty Claims against the Released Parties are released through the Effective Date, December 8, 2008"; "DECLARE[D], ADJUDGE[D], AND DECREE[D] that this Agreement provides the exclusive remedy for Class Members (and any successors in interest) with respect to any and all Royalty Claims . . . that were or could have been brought in this action"; and "RESERVE[D] . . . continuing and exclusive jurisdiction over the Parties and Class Members to administer, supervise, construe, and enforce the Agreement." J.A. 160.

B.

On June 9, 2017, the Huey Plaintiffs filed the Wetzel County litigation against EQT. In that case, the Huey Plaintiffs allege, among other things, that EQT trespassed on their mineral estate, which the Huey Plaintiffs, at some point, leased to EQT by the Hoge Lease. The Hoge Lease, entered into in 1900, included a habendum and cessation clause which provided that the lease was to have an initial term of five years and would continue to be held open "as long after the commencement of operations as said premises are operated for the production of oil or gas." J.A. 288. The Huey Plaintiffs were under the belief that the Hoge Lease was held open for production from 1935 to 2014 only by one well, EQT Well #1785.

The Wetzel County complaint alleges that EQT approached the Huey Plaintiffs in 2010 with proposed amendments to the Hoge Lease. The Huey Plaintiffs allege that their

investigation and discovery in 2017 revealed that Well #1785 "was not producing [oil] for substantial periods of time in 1987 and 2004-2005." J.A. 288. Therefore, the Huey Plaintiffs allege that, because of the habendum clause, the Hoge Lease terminated on its own when the well stopped producing. Thus, they claim that when EQT entered the Hoge Lease property in 2013-2014 to drill and remove hydrocarbon products, they were trespassing in violation of West Virginia Code § 22-6-8 and the common law of West Virginia.

## C.

On September 2, 2020, three years after the Huey Plaintiffs filed the Wetzel County litigation, EQT filed a motion with the district court to enforce the 2008 final order and judgment, alleging that the Huey Plaintiffs are in violation of the court's order adopting the Agreement. EQT alleges that (1) the trespass claim in the Wetzel County litigation is a royalty claim that was released by the Agreement's terms and (2) the Agreement was predicated on the validity of the subject leases and, by submitting a Flat Rate Claim Form and accepting settlement funds, the Huey Plaintiffs represented and warranted that they held a valid lease and had the right to payment, so the argument in the Wetzel County litigation seeking to terminate the Hoge Lease is in violation of the Agreement. The district court denied the motion.

The district court determined that "[t]he threshold question is whether the Huey Plaintiffs' trespass claim in the Wetzel County litigation is a 'royalty claim' that was or could have been brought in this case and was therefore released by the Agreement and

7

Final Order." *Kay Co. v. Equitable Prod. Co.*, 535 F. Supp. 3d 537, 541 (S.D.W. Va. 2021). If so, the Huey Plaintiffs had released that claim by consenting to the Agreement and Final Order. The court found, however, that it was not a royalty claim. *Id.* It highlighted that the Agreement makes clear that royalty claims are claims "*based upon the failure to pay proper royalty*." *Id.* (citation omitted). The court found that the trespass claim in the Wetzel County litigation "has nothing to do with whether EQT paid proper royalties." *Id.* "In fact, it is premised on the idea that EQT had no royalties to pay because the Hoge Lease terminated of its own accord through nonproduction." *Id.* Thus, the court found that the trespass claim was not released by the Agreement.

Regarding EQT's second argument, the district court declined to exercise its discretion to enjoin the Wetzel County litigation because it did not find that an exception to the Anti-Injunction Act existed. *Id.* at 541. Even if an exception existed, the district court stated it would not use its discretion to enjoin the Wetzel County litigation because it was an extraordinary measure and EQT had other remedies. *Id.* at 542. EQT timely appealed these findings.

## II.

A district court's analysis of a settlement agreement is a matter of contract interpretation, a legal issue that we review de novo. *See, e.g.*, *Williams v. Pro. Transp., Inc.*, 294 F.3d 607, 613 (4th Cir. 2002) (citing *Nehi Bottling Co. v. All-American Bottling Corp.*, 8 F.3d 157, 161 (4th Cir.1993)). We review a district court's order enforcing the

settlement agreement for abuse of discretion.  *Id.* (citing *Young v. FDIC*, 103 F.3d 1180, 1194 (4th Cir. 1997)).

We also review de novo a district court's interpretation of the Anti-Injunction Act, including its determination about whether the exceptions to the Act apply.  *See In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 363 (3d Cir. 2001); *see also Tooele Cnty. v. United States*, 820 F.3d 1183, 1187 (10th Cir. 2016).  When a district court has correctly interpreted the Act, its determination as to whether to enjoin a state court action is reviewed for abuse of discretion.  *In re Am. Honda Motor Co.*, 315 F.3d 417, 434 (4th Cir. 2003); *see also  Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1377 (9th Cir. 1997).

### III.

EQT asks this Court to reverse the district court for three reasons.  First, EQT contends that the district court failed to find that the Huey Plaintiffs are class members bound by the Settlement Agreement.  Second, EQT argues that the district court erred in determining that the Wetzel County litigation was not a royalty claim, which the Agreement would have precluded.  Third, EQT asserts that the district court erred in finding that two exceptions to the Anti-Injunction Act did not apply here and that the court abused its discretion in not issuing an injunction.  We consider these arguments in turn.

9

A.

EQT first claims that the district court did not treat the Huey Plaintiffs as class members bound by the Agreement, which was erroneous as a matter of law. We reject this argument. The district court did not find that the Huey Plaintiffs *were not* class members. To the contrary, the district court analyzed whether the Huey Plaintiffs contravened the Agreement, so it clearly assumed the Huey Plaintiffs were class members by binding them to the Agreement. The Huey Plaintiffs, in fact, present themselves as class members. *See* Resp. Br. at 19, 26. We find no error in the district court's approach.

B.

EQT next asserts that the trespass claim in the Wetzel County litigation is a royalty claim and thus it is released by the Agreement. As part of the federal class action, the Huey Plaintiffs agreed to release EQT "from any and all claims . . . for improper payments of royalty claims for the time periods covered by this Amended Settlement Agreement." J.A. 77. EQT claims that the Huey Plaintiffs' trespass claim in the Wetzel County litigation is a royalty claim and thus should be enjoined. After reviewing the district court's opinion, we agree that the trespass claim in the Wetzel County litigation is not a royalty claim as defined by the Agreement.

The Agreement makes clear that royalty claims are claims "based upon the failure *to pay* proper royalty." J.A. 89 (emphasis added). EQT, instead, proposes that "'Royalty Claims' are defined as claims that were or could have been raised in the class action, primarily sounding in breach of contract but also including fraud claims." Resp. Br. at 41.

10

It then argues that the complaint in the Wetzel County litigation alleges that EQT breached its contractual duties, which makes it a royalty claim. EQT does not rely on the Agreement for this idea and this argument ignores the definition of royalty claims in the Agreement. *See* J.A. 89.

While there are other claims in the Wetzel County litigation discussing royalties, the trespass claim is not about royalties—it is about damage to the Huey Plaintiff's property. Importantly, the appeal before this Court is only about the trespass claim in the Wetzel County litigation, not any of the other claims. The Huey Plaintiffs assert in their trespass claim that EQT's actions allegedly diminished the value of the Huey Plaintiffs' mineral estate. Specifically, the Huey Plaintiffs allege in their Wetzel County litigation complaint that:

> In violation of West Virginia Code § 22-6-8 and the common law of West Virginia, [EQT] illegally obtained permits from the West Virginia Department of Environmental Protection to drill wells on the Hoge Lease and, therefore, *have trespassed on Plaintiff's mineral estate*.

J.A. 278 (emphasis added). That claim clearly does not mention royalties and does not fall inside the Agreement's definition of royalty claims.

Furthermore, even if the trespass claim were a royalty claim, it would not be blocked by the Agreement. The trespass claim is about an alleged trespass that occurred in 2013 and 2014. The Agreement only releases claims for "improper payment of royalties *for the time periods covered by this Settlement Agreement*." J.A. 77 (emphasis added). The time period covered by the settlement is February 1, 2000, to December 8, 2008. So, the Wetzel County litigation trespass claim is not even part of the covered period.

11

Thus, we affirm the district court's holding that the trespass claim is not a royalty claim and not released by the Agreement.

IV.

Next, EQT asserts that the district court erred in finding exceptions to the Anti-Injunction Act inapplicable to the Wetzel County litigation. The All Writs Act, 28 U.S.C. § 1651, authorizes federal courts to enjoin state proceedings that interfere with federal judgments. The Anti-Injunction Act, however, clarifies that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by an Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Thus, a federal court may only do so when an exception to the Anti-Injunction Act applies. *Nationwide Mut. Ins. Co. v. Burke*, 897 F.2d 734, 737 (4th Cir. 1990) (citing *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)). The Supreme Court further explained that these three exceptions "are narrow and are 'not to be enlarged by loose statutory construction.'" *Chick Kam Choo*, 486 U.S. at 146 (quoting *Atl. Coast Line*, 398 U.S. at 287) (cleaned up). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Atl. Coast Line*, 398 U.S. at 297; *accord Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011). However, even "[w]hen an exception to the Anti-Injunction Act is present, a district court *may* issue an injunction, but it is not *required* to do so." *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 252 (4th Cir. 2013) (emphasis in original). These limitations "rest[ ] on the fundamental constitutional

12

independence of the States and their courts," *Atl. Coast Line*, 398 U.S. at 287, and reflect "Congress' considered judgment as to how to balance the tensions inherent in such a system," *Chick Kam Choo*, 486 U.S. at 146.

EQT asserts that two exceptions to the Anti-Injunction Act—the "in aid of jurisdiction" and the "relitigation" exceptions—are met here and permit the district court to issue an injunction. We disagree.

A.

The "in aid of jurisdiction" exception applies when the state court action may "seriously impair the federal court's flexibility and authority to decide [its] case." *Atl. Coast Line*, 398 U.S. at 295. The district court found that the Wetzel County litigation did not in any way interfere with its flexibility and authority to decide its case, as that case had been decided almost 11 years ago. *Kay Co.*, 53 5 F. Supp. 3d at 541.

EQT argues that this exception is not restricted temporally to state-court claims that occur only before the federal decision. While this is true, we find the district court did not err in finding that the Wetzel County litigation does not impact its jurisdiction here. The "in aid of jurisdiction" exception requires more than just the state-court action being related to the subject matter upon which the federal court has retained jurisdiction. *See Atl. Co. Line*, 398 U.S. at 295. "[I]t is not enough that the requested injunction is related to that jurisdiction, but it must be 'necessary in aid of' that jurisdiction." *Id.* The Supreme Court has explained, "[w]hile this language is admittedly broad, we conclude it implies something similar to the concept of injunctions to 'protect or effectuate' judgments." *Id.*

13

An injunction is not necessary here to protect or effectuate the class action judgment. The Agreement and final judgment apply only to royalty claims during the period of February 1, 2000, through December 8, 2008. The Wetzel County litigation does not assert any such claims. Thus, the district court was correct in concluding that "[n]othing about the Wetzel County litigation interferes with [its] ability to decide this case." *Kay Co.*, 535 F. Supp. 3d at 541; *see also Sandpiper Village Condo. Ass'n, Inc. v. La.-Pac. Co.*, 428 F.3d 831, 844 (9th Cir. 2005) (holding that the "in aid of jurisdiction" exception did not warrant enjoining state court litigation involving some of the same facts as a district court class action where the class action "had long since been resolved"). Because the Wetzel County litigation does not "seriously impair the district court's flexibility and authority to decide," *Atl. Coast Line*, 398 U.S. at 295, the class action, we affirm the court's holding regarding this exception.

## B.

The relitigation exception to the Anti-Injunction Act was "designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *In re Am. Honda Motor Co.*, 315 F.3d at 440 (quoting *Chick Kam Choo*, 486 U.S. at 147). "If a federal court errs in declining to issue an injunction 'all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res judicata and collateral estoppel." *Bluefield Cmty. Hosp.*, 737 F.2d at 408 (quoting *Reg'l Props., Inc. v. Fin. & Real Est. Consulting Co.*, 678 F.2d 552, 566 (5th Cir. 1982)). EQT bears the burden of establishing that this exception applies: "[a] complainant

14

who seeks to invoke § 2283's relitigation exception must make a 'strong and unequivocal showing' of relitigation of the same issue." *Nationwide Mut. Ins.*, 897 F.2d at 737 (quoting *Bluefield Cmty. Hosp. v. Anziulewicz*, 737 F.2d 405, 408 (4th Cir. 1984)).

EQT argues that the Agreement and payment of settlement funds were predicated on each class member representing and warranting that he or she held a valid lease and was due the money owed, and that the Agreement prevents class members from later terminating the subject lease. The Huey Plaintiffs assert that they are not seeking to terminate their lease in the Wetzel County litigation. Instead, the Huey Plaintiffs argue in the Wetzel County litigation that they did not know at the time of the Agreement that they did not hold a valid lease. They contend the lease at issue terminated on its own before the class action was even filed. Thus, the court found, the Huey Plaintiffs are not trying to relitigate the class action issues. *Kay Co.*, 535 F. Supp. 3d at 541. The court concluded that the issues in the trespass claim were not squarely presented for the court's determination, and, therefore, the Wetzel County litigation is not a relitigation. *Id.*

We agree with the district court that the trespass claim is not a relitigation of the class action. As discussed above, the trespass claim is not a royalty claim and is not based on the same kind of claim as the class action. The Supreme Court has explained "an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction [would] insulate [ ] from litigation in state proceedings *actually have been decided* by the federal court." *Chick Kam Choo*, 486 U.S. at 148 (emphasis added). The trespass claim is not relitigating an issue already decided, as it is a different claim than those in the class action, and the trespass occurred after the relevant

15

time period covered by the class action. The trespass claim concerns whether the Hoge Lease terminated pursuant to the habendum clause in the Huey Plaintiff's lease—an issue that was not before the court as part of the class action and is a state law issue.

EQT argues that the Huey Plaintiffs have represented and warranted the validity of the subject lease. We disagree. All the Huey Plaintiffs warranted was that they were the owners of the interest in the lease at issue during the compensation period. J.A. 102. A trespass claim based on the theory that the Hoge Lease expired does not violate the warranty that the Huey Plaintiffs owned the lease at issue. Thus, we reject EQT's argument.

In sum, we hold that the district court was correct in finding that the relitigation exception does not apply.

C.

Even if an exception to the Anti-Injunction Act did exist in this case, the district court was still not required to issue an injunction. "When an exception to the Anti-Injunction Act is present, a district court *may* issue an injunction, but it is not *required* to do so." *Ackerman*, 734 F.3d at 252. "[W]hether to enjoin state-court proceedings is always discretionary." *Id.* (citing *Chick Kam Choo*, 486 U.S. at 151). We find that the district court was within its discretion to not issue an injunction.

The district court made clear that it would not use its discretion to issue an injunction even if an exception to the Anti-Injunction Act existed, stating:

16

> Enjoining a state court action is an extraordinary measure not to be taken lightly. The settlement class in this case included an estimated 10,000 plaintiffs and the Agreement will not be disturbed as to any of them, except the Huey Plaintiffs, regardless of the outcome of the Wetzel Count litigation.

*Kay Co.*, 535 F. Supp. 3d at 542 (citation omitted). The district court noted that EQT has other remedies available to it if the state court finds that the Huey Plaintiffs did not have a valid lease for which they were due royalty payments under the Agreement— "it could request an order requiring the Huey Plaintiffs to repay the settlement funds they were awarded here." *Id.* That is a specified remedy in the Agreement. *See* J.A. 77 ("The Claim Form also will provide that the Class Member . . . will agree . . . to return any settlement payment that is determined to have been improperly made.").

In short, the Anti-Injunction Act gives courts discretion to refrain from enforcing its exceptions because of the strength of the Act's general prohibition. *See Ackerman*, 734 F.3d at 252. The district court weighed the factors for and against issuing an injunction and was entitled to exercise this discretion. *See, e.g.*, *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1274 (7th Cir. 1976) ("The power to enjoin state proceedings is discretionary, allowing the court to weigh those factors both pro and con to the issuance of a stay."). EQT has not shown that the district court abused its discretion, and we discern no abuse of that discretion. We affirm the district court's decision to not issue an injunction.

17

V.

For the above reasons, the district court's denial of EQT's motion to enforce the class action settlement is

*AFFIRMED.*