**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-1495**

WUDI INDUSTRIAL (SHANGHAI) CO., LTD.,

Plaintiff – Appellant,

v.

WAI L. WONG,

Defendant – Appellee,

and

GT OMEGA RACING LTD.,

Counter Claimant – Appellee.

**No. 22-1662**

WUDI INDUSTRIAL (SHANGHAI) CO., LTD.,

Plaintiff – Appellant,

v.

WAI L. WONG,

Defendant – Appellee,

and

GT OMEGA RACING LTD.,

Counter Claimant – Appellee.

—————————

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:20-cv-00908-CMH-TCB)

—————————

Argued:  December 8, 2022                                      Decided:  June 5, 2023

—————————

Before GREGORY, Chief Judge, and KING and RUSHING, Circuit Judges.

—————————

Vacated and remanded by published opinion.  Judge King wrote the majority opinion, in which Chief Judge Gregory joined.  Judge Rushing wrote a dissenting opinion.

—————————

**ARGUED:**  Gaspare Joseph Bono, DENTONS US LLP, Washington, D.C., for Appellant.  Craig Crandall Reilly, LAW OFFICE OF CRAIG C. REILLY, Alexandria, Virginia, for Appellees.  **ON BRIEF:**  Derek A. Auito, Washington, D.C., Tony K. Lu, DENTONS US LLP, Boston, Massachusetts, for Appellant.  Catherine Simmons-Gill, OFFICE OF CATHERINE SIMMONS-GILL, LLC, Chicago, Illinois; Lisa L. Clay, LISA L. CLAY, ATTORNEY AT LAW, Wheaton, Illinois, for Appellees.

—————————

KING, Circuit Judge:

In these consolidated appeals from the Eastern District of Virginia, plaintiff Wudi Industrial (Shanghai) Co., Ltd. challenges two adverse rulings made by the district court in favor of defendant Wai L. Wong and his business entity, GT Omega Racing, Ltd. (collectively "GTOR"). As explained below, we agree with Wudi's primary contention that the district court's challenged rulings constitute awards of injunctive relief in favor of GTOR and against Wudi. Secondly, we also agree that the challenged rulings failed to comport with the applicable Rules of Civil Procedure and controlling precedent. Accordingly, because the district court erred in awarding injunctive relief in these circumstances, we vacate the challenged rulings and remand for further proceedings.

I.

This litigation arises out of a contentious trademark dispute between Wudi and GTOR, which are Asian-centered business entities that compete in the marketing of video gaming chairs and other products. In March 2017, Wudi obtained from the United States Patent and Trademark Office ("USPTO") a registration for the stylized word mark "GTRACING." For its part, GTOR claimed that it already owned an earlier use of a similar word mark — that is, "GT OMEGA RACING" — and challenged Wudi's registration of the "GTRACING" word mark in cancellation proceedings before a USPTO component called the Trademark Trial and Appeals Board (the "Board"). In June 2020, the Board ruled in favor of GTOR, concluding that Wudi's use of the "GTRACING" word mark encroached on GTOR's earlier use of its own "GT OMEGA RACING" word mark.

3

Seeking de novo review of the Board's cancellation ruling, Wudi initiated this civil action in the district court in August 2020, pursuant to 15 U.S.C. § 1071(b)(1) (specifying that a dissatisfied party in a trademark dispute may a file civil action in a district court, "unless appeal has been taken to [the] United States Court of Appeals for the Federal Circuit").

In May 2021, the parties reached a global confidential settlement of their trademark dispute and entered into a concurrent-use agreement (the "Agreement"). The Agreement established the parties' rights and restrictions with respect to the worldwide promotion, advertisement, and sale of their gaming products. Relevant here, the Agreement assigned to Wudi the right to use the "GTRACING" word mark in all global markets — except within a so-called "European Carve Out," which is a geographical area comprised of 53 named countries. More specifically, paragraph 6 of the Agreement provided that, within the European Carve Out, Wudi must refrain from purchasing "ad-words from Google or any other search engine or from Amazon or any other shopping site . . . and will not use on Facebook or any other social media platform . . . any terms that include (with or without other words) any of the following: ['GT RACING'] or ['GTRACING']" *See* J.A. 162.[1] In exchange for Wudi's acquisition of those rights to the "GTRACING" word mark, the Agreement required Wudi to pay to GTOR the sum of $4,500,000. The Agreement provided that, once those conditions were satisfied, a stipulated final judgment would be entered by the district court to resolve the trademark dispute underlying this litigation.

---

[1] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

4

To afford the parties sufficient time to comply with the Agreement, the district court in June 2021 granted the parties' joint motion to stay the litigation proceedings, pending entry of the stipulated final judgment. During that compliance period, however, a dispute arose in January 2022 regarding Wudi's alleged use of the "GTRACING" word mark within the 53 countries of the European Carve Out. Ultimately, GTOR filed with the court in April 2022 a motion for enforcement of the Agreement, alleging therein that Wudi was in breach of the Agreement's "ad-words" provision. More specifically, GTOR's motion to enforce maintained that some of Wudi's marketing and promotional content — which contained the "GTRACING" word mark — was yet impermissibly accessible within the European Carve Out, in contravention of paragraph 6 of the Agreement.

On April 29, 2022, the district court granted GTOR's motion to enforce the Agreement and — instead of entering the stipulated final judgment — ordered Wudi to "immediately cease" certain conduct. *See Wudi Indus. (Shanghai) Co. v. Wong*, No. 1:20-cv-00908, at 2 (E.D. Va. Apr. 29, 2022), ECF No. 103 (the "First Order"). Pursuant to the court's First Order, Wudi was — within 7 days — to "take down all posts [containing the "GT RACING" word mark] . . . on its proprietary social media platforms that are accessible in the European Carve Out," and was also to "immediately cease from making further posts on its proprietary social media platforms that are accessible in the European Carve Out." *Id.* at 1-2. The First Order declared that Wudi was to "direct all entities and individuals with whom [it] has a business relationship to take down all posts, whenever made, on social media platforms that are accessible in the European Carve Out." *Id.* at 2. Importantly, the

5

First Order further provided that, if Wudi failed to comply with those specific directives, the court would "enforce [the First Order] through findings of contempt." *Id.* at 2.

Notwithstanding the foregoing enjoining language, the district court did not make any findings of fact or conclusions of law in support of the First Order, as mandated by Federal Rules of Civil Procedure 52 and 65.  *See* Fed. R. Civ. P. 52, 65 (requiring that district court make findings of fact and conclusions of law when awarding injunctive relief).  Furthermore, the First Order did not contain any analysis indicating that the court had applied and evaluated the four-factor *eBay v. MercExchange* test, which the Supreme Court has required to be satisfied before a trial court can award injunctive relief.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (identifying factors that party must satisfy in order to obtain injunctive relief).

On May 5, 2022, Wudi noted an interlocutory appeal of the First Order, which was filed as Appeal No. 22-1495 in this Court.  Wudi then promptly sought from this Court a stay of the First Order pending its appeal, despite not having first filed such a request with the district court, nor otherwise showing or seeking to show that it would have been "impracticable" to do so.  *See* Fed. R. App. P. 8 (requiring that "[a] party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal," unless "moving first in the district court would be impracticable").

On May 13, 2022, because our appellate jurisdiction turned on whether the district court had actually "grant[ed] . . . [an] injunction" for purposes of 28 U.S.C. § 1292(a)(1), we ordered a limited remand in Appeal No. 22-1495.  We therein requested the district court to clarify whether the First Order constituted an award of preliminary injunctive

6

relief. If the First Order afforded such relief, we sought the court's compliance with Rules 52 and 65, in addition to a proper assessment of the four *eBay* factors. Given the circumstances, we retained jurisdiction in Appeal No. 22-1495 and entered a temporary stay of the First Order, to remain in effect during the limited remand proceedings.

On June 2, 2022, the district court entered another order stating that — despite the First Order's utilization of specific enjoining language — GTOR had not requested an injunction and the First Order did not constitute a preliminary injunction. *See Wudi Indus. (Shanghai) Co. v. Wong*, No. 1:20-cv-00908, at 2 (E.D. Va. June 2, 2022), ECF No. 118 (the "Second Order"). Instead of offering its legal reasoning underpinning that conclusion, the Second Order stated that the First Order had been a grant of specific performance under Virginia law. At that juncture, the court entered the stipulated final judgment, again without any legal reasoning or other explanation in support thereof.

Wudi promptly appealed the Second Order in June 2022, which was filed as Appeal No. 22-1662 in this Court. Upon Wudi's request, we consolidated the two appeals. On June 28, 2022, although Wudi had again not previously moved for a stay of the challenged rulings in the district court, a divided panel of our Court granted a stay to Wudi of the challenged rulings pending resolution of these appellate proceedings.

## II.

### A.

As a threshold matter, in our May 2022 order of limited remand, we asked whether the First Order constituted an "[i]nterlocutory order . . . granting" an injunction, which may

7

have permitted Wudi to pursue an interlocutory appeal under 28 U.S.C. § 1292(a)(1). Despite those initial jurisdictional concerns, we are now satisfied that the Second Order — which was accompanied by the entry of the parties' stipulated final judgment — constitutes an appealable "final decision" for purposes of 28 U.S.C. § 1291. As such, we possess appellate jurisdiction in these consolidated appeals.

B.

On appeal, Wudi maintains, inter alia, that the First Order — as entered in the proceedings underlying Appeal No. 22-1495 — is actually a preliminary injunction that was made permanent by the Second Order. According to Wudi, because the First Order constitutes an award of injunctive relief, the district court was obliged — but failed — to adhere to the rules controlling a district court's award of injunctive relief, as specified in Federal Rules of Civil Procedure 52 and 65. In addition, Wudi maintains that the court failed to comply with the Supreme Court's four-factor *eBay* test by awarding permanent injunctive relief to GTOR. As to each contention, we agree with Wudi.

1.

We preface our analysis by reviewing the legal landscape regarding the issuance of federal court injunctions. As previously referenced, the Federal Rules of Civil Procedure specify procedural rules that apply when a district court awards injunctive relief. For its part, Rule 52(a)(2) provides that, "[i]n granting or refusing an interlocutory injunction," a district court must "state the findings and conclusions that support its action." Meanwhile, Rule 65(d) — entitled, in relevant part, "Contents and Scope of Every Injunction" — specifies that "[e]very order granting an injunction . . . must: (A) state the reasons why it

8

issued; (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained or required."  In that sense, the Supreme Court has underscored that Rule 65(d)'s requirements apply generally to "equitable decree[s] compelling obedience under the threat of contempt."  *See Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 75 (1967).

Moreover, as our Court has recognized, the terms of Rule 65(d) "are mandatory and must be observed in every instance."  *See Thomas v. Brock*, 810 F.2d 448, 450 (4th Cir. 1987) (internal quotation marks omitted).  And the Supreme Court has emphasized that

> the specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.

*See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).  That is because appellate courts are entitled to understand the underpinnings of an injunction order and, without specificity, "review of an injunctive order is 'greatly complicated, if not made impossible.'"  *See CPC Intern., Inc. v. Skippy*, 214 F.3d 456, 459 (4th Cir. 2000) (quoting *Schmidt*, 414 U.S. at 477).  Rule 65(d) thus "serves the twin purposes of providing fair notice of what an injunction requires and of facilitating appellate review."  *Id.*

In addition to complying with the applicable Rules of Civil Procedure, and because injunctive relief is a "drastic and extraordinary remedy" to be utilized sparingly, the district court is duty bound to ensure that the party seeking injunctive relief has made the requisite showings.  *See SAS Inst., Inc. v. World Programming Ltd.*, 952 F.3d 513, 528 (4th Cir.

9

2020) (internal quotation marks omitted).  Under the Supreme Court's *eBay* decision of 2006, a party seeking permanent injunctive relief must demonstrate the following:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*See eBay*, 547 U.S. at 391.[2]

At bottom, if a district court has applied the four-factor *eBay* test and awarded an injunction, we review that decision for abuse of discretion.  *See Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 213 (4th Cir. 2019) (internal quotation marks omitted).  Of importance, an error of law is by definition an abuse of discretion, and such an error is alone "grounds for reversal."  *Id.*

### 2.

### a.

Against this backdrop, we must address the question of whether the First Order actually constitutes an injunction.  As we explained in our May 2022 remand order, the "magic word" injunction is not required for an order of a district court to be an injunction.

---

[2] Pursuant to the Supreme Court's *Winter* decision of 2008, a party seeking preliminary injunctive relief is obliged to demonstrate the following:

> [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.

*See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

*See Wudi Indus. (Shanghai) Co. v. Wong*, No. 22-1495, at 1-2 (4th Cir. May 13, 2022), ECF No. 26 (internal quotation marks omitted) (citing *Union Oil Co. v. Leavell*, 220 F.3d 562, 566 (7th Cir. 2000)). Several of our sister circuits have recognized that a court order must satisfy two requirements to be an injunction: (1) the order must describe the specific conduct required in detail; and (2) the order must provide a deadline to act. *See, e.g.*, *Petrello v. White*, 533 F.3d 110, 116 (2d Cir. 2008) (describing the previously identified two components of injunctions); *see also Sheet Metal Workers' Int'l Ass'n Loc. 19 v. Herre Bros.*, 201 F.3d 231, 238 (3d Cir. 1999) (same); *Parker v. Ryan*, 960 F.2d 543, 545 (5th Cir. 1992) (same); *Marseilles Hyrdo Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 646 (7th Cir. 2002) (same); *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1222 (10th Cir. 2009) (same). As the Seventh Circuit has explained, an injunction order also requires the enjoined party to "perform enumerated steps under threat of . . . contempt." *See Union Oil*, 220 F.3d at 566.

In the circumstances presented, we agree with Wudi that the First Order constitutes a preliminary injunction. And that preliminary injunction was thereafter made a permanent injunction by entry of the Second Order. In reaching that conclusion, we assess the text of the First Order itself and simply "adhere to the time-tested adage: if it walks like a duck, quacks like a duck, and looks like a duck, then it's a duck." *See BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1337 (11th Cir. 1998). Importantly, however, we have heretofore observed that, "[i]f something looks like a duck, walks like a duck, and talks like a duck, and the district court determines it to be a duck, it is not our place on review to call it something else." *See Lane v. United States*, 286 F.3d 723, 730 (4th Cir. 2002).

11

In contrast to the observation made by our Court in the *Lane* case, the opposite is true here. That is, the First Order "looks like [an injunction], walks like [an injunction], and talks like [an injunction]," yet the district court nevertheless ruled that it is *not* an injunction. *See Lane*, 286 F.3d at 730. In making our assessment, we observe that "the absence of any semblance of effort by the District Court to comply with Rule 65(d)" is evidence that the court may not have actually intended to enter "an order granting an injunction." *See Gunn v. Univ. Comm. to End the War in Viet Nam*, 399 U.S. 383, 389 n.4 (1970). In this situation, however, we are confident that "substance . . . control[s] over form." *See Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1358 (11th Cir. 2008).

Our conclusion that the First Order constitutes a preliminary injunction — later made permanent by the Second Order — garners strong support from the Eleventh Circuit's 2008 *Van Antwerp* decision. *See* 526 F.3d at 1358. Although in the context of analyzing its collateral order jurisdiction under 28 U.S.C. § 1292(a)(1), the Eleventh Circuit in *Van Antwerp* was presented with facts that are closely identical to those presented here. In that instance, the district court had entered a so-called "Remedies Order," which it had expressly declared was "not . . . an injunction." *Id.* Applying the above-recited "duck test," the Eleventh Circuit disagreed with that assessment and concluded that the order was actually an injunction, in that it "contain[ed] clear, enforceable directives" under threat of contempt. *Id.* And stressing the notion that "substance should control over form," the

12

Eleventh Circuit further recognized that "[t]he district court issued commands of such specificity and breadth that no litigant would dare to violate them." *Id.*

To that end, we emphasize that the First Order possesses all of the necessary attributes and thus qualifies as an injunction order. That is, the First Order contains "clear, enforceable directives" and threatens Wudi with contempt for noncompliance. *See Van Antwerp*, 526 F.3d at 1358. It repeatedly uses the phrase "immediately cease" with respect to specific conduct, and it directs Wudi to comply with those commands "within seven days." *See* First Order 1-2. And the First Order is both mandatory and prohibitory — it requires Wudi "to abide by an agreement," *see Int'l Longshoremen's*, 389 U.S. at 75, yet it also prohibits Wudi from engaging in a broad range of conduct (some of which is arguably outside the Agreement's scope). We therefore readily conclude that, "however [the First Order] might be characterized" by the district court, it is — factually and legally — "an order granting an injunction." *Id.* at 75-76.

b.

Adopting a position similar to that espoused by the district court in the Second Order, GTOR resists our straightforward conclusion that the First Order was a preliminary injunction. It instead argues that the First Order was actually a grant of specific performance under Virginia law. According to GTOR, the First Order was not an injunction, but merely a command that Wudi abide by the Agreement. As a result, GTOR maintains that the court was never obliged to adhere to Rules 52 and 65 of the Federal Rules of Civil Procedure, or to analyze the four *eBay* factors. For support, GTOR points to the Virginia high court and its 1894 *Rison v. Newberry* decision, which states that

13

"[s]pecific performance is an equitable remedy . . . [compelling] the performance of a contract in the precise terms agreed upon." *See* 18 S.E. 916, 919 (Va. 1894).

Put simply, we are constrained to reject GTOR's characterization of the First Order. That is, in light of the Agreement's contested terms, we doubt that the First Order actually "compels the performance of a contract in the *precise terms* agreed upon" by the parties. *See Rison*, 18 S.E. at 919 (emphasis added). But if we were to assume that the First Order is merely a grant of specific performance, GTOR's position suffers from a crucial and fatal infirmity: "[i]f there is a factual dispute over . . . [an] agreement's terms, the district court may not enforce a settlement agreement summarily." *See Hensley v. Alcon Lab'ys, Inc.*, 277 F.3d 535, 541 (4th Cir. 2002). As we recognized in our *Hensley* decision, "when such factual disputes arise, the court must conduct a plenary evidentiary hearing in order to resolve that dispute, . . . and make findings on the issues in dispute." *Id.* (internal quotation marks omitted). On that score, the parties' appellate positions readily confirm that factual disputes are present here. As such, the district court would be obliged to conduct appropriate evidentiary hearings and "make findings on the issues in dispute." *Id.*

3.

Given that the First Order is a preliminary injunction which was rendered permanent by the Second Order, it is apparent that the district court made procedural errors that amount to abuses of its discretion. Foremost, the First Order fails to comply with Rules 52 and 65, in that the court did not "state the findings and conclusions that support its action," *see* Fed. R. Civ. P. 52(a)(2), nor did it "state the reasons why [the preliminary injunction] issued," "state [the injunction's] terms specifically," or "describe in reasonable detail . . .

14

the acts or acts restrained," *see* Fed. R. Civ. P. 65(d).  Nor did the First Order properly assess whether GTOR — as the party then requesting preliminary injunctive relief — could satisfy the four-factor *Winter* test.  *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  And by the Second Order, the court fatally failed to ascertain whether GTOR — as the party seeking permanent injunctive relief — could satisfy the four-factor *eBay* test.  *See* 547 U.S. at 391.[3]

We are thus satisfied that, "[b]ecause the district court's [challenged rulings are] . . . not properly supported, [they] cannot be further extended."  *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 423 (4th Cir. 1999).  Moving forward, if the district court decides to enter another injunction (whether preliminary or permanent), it must not only comply with the applicable Rules of Civil Procedure, but also carefully assess whether the appropriate four-factor test is satisfied.

## C.

Finally, we recognize the fact that Wudi also presents several merits-based contentions in these consolidated appeals.  Because we vacate the challenged rulings on

---

[3] Wudi maintains that, if the Second Order is a permanent injunction, we should proceed now and assess — for the first time on appeal — the four *eBay* factors.  *See* Br. of Appellant 40-45.  We decline Wudi's invitation, however, in that the record on appeal is not "sufficiently developed" for us "to analyze the factors necessary to justify" an award of injunctive relief.  *See Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1222 (10th Cir. 2009).  And we agree with GTOR that a proper analysis of the *eBay* factors should be conducted by the district court in the first instance.  *See, e.g., Demarco v. United States*, 415 U.S. 449, 450 n.* (1972) (observing that "factfinding is the basic responsibility of district courts, rather than appellate courts, and [an appellate court should not resolve] in the first instance [a] factual dispute which had not been considered by the District Court").

15

procedural grounds, however, we do not resolve any merits-based contentions. Those

issues are reserved for the district court on remand.[4]

III.

Pursuant to the foregoing, we vacate the challenged rulings and remand for such

other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

---

[4] During oral argument, Wudi's lawyer requested that, if we vacate the challenged rulings, the June 2022 stay should remain in place for the remand proceedings. We decline, however, to extend the stay beyond the issuance of the mandate. By today's ruling, Wudi is no longer enjoined, nor is it subject to contempt. If, upon further consideration, the district court issues a proper injunction order, Wudi is entitled to seek a stay of that ruling from the district court pending appeal. We take this opportunity to remind lawyers and litigants of Rule 8's requirement that — absent a showing of "impracticability" or inaction by the district court — a party must first seek a stay pending appeal from the district court, not the court of appeals. *See* Fed. R. App. P. 8(a)(2)(A)(i)-(ii).

16

RUSHING, Circuit Judge, dissenting:

Wudi appeals the district court's order enforcing its Settlement Agreement with GTOR, which the parties entered in 2021 to settle a trademark dispute. At the parties' request, the district court stayed the case and retained jurisdiction while they came into compliance with the Agreement's directives pursuant to its internal deadlines. During the stay, GTOR moved to enforce the Agreement, claiming that Wudi refused to comply with paragraph 6(b). In response, Wudi admitted its conduct but argued that GTOR misinterpreted paragraph 6(b). After receiving briefing and holding a hearing to consider the parties' arguments, the district court found Wudi in breach of the Agreement and ordered Wudi to comply by following a series of detailed steps.

Unlike the majority, I agree with the district court—and the parties, as they presented the case there—that the court's order is the summary enforcement of a settlement agreement. Because the district court correctly followed our longstanding precedent for resolving motions to enforce settlement agreements, I respectfully dissent.

I.

The procedures a district court must follow when it resolves a motion to enforce a settlement agreement over which it has ancillary jurisdiction are well settled. If resolving the motion requires adjudicating material factual disputes, the district court may not summarily enforce the settlement agreement but must hold a plenary evidentiary hearing. *See Hensley v. Alcon Laby's, Inc.*, 277 F.3d 535, 540–541 (4th Cir. 2002). Following that hearing, the district court must make findings of fact and conclusions of law either in writing or orally on the record. *See, e.g., Alexander v. Indus. of the Blind, Inc.*, 901 F.2d

17

40, 41 (4th Cir. 1990). We have typically required a plenary hearing when the parties dispute the existence of a settlement agreement, the attorneys' authority to enter the agreement on behalf of their clients, or the agreement's terms. *See Hensley*, 277 F.3d at 541 & n.*. However, if the facts are undisputed, the district court may summarily interpret and enforce the agreement without a hearing, so long as any "excuse for nonperformance of the agreement is comparatively insubstantial." *Id.* at 540 (internal quotation marks omitted); *see Swift v. Frontier Airlines, Inc.*, 636 Fed. App. 153, 155–156 (4th Cir. 2016); *Topiwala v. Wessell*, 509 Fed. App. 184, 187 (4th Cir. 2013); *Alexander*, 901 F.2d at 41; *Millner v. Norfolk & W. Ry.*, 643 F.2d 1005, 1009 (4th Cir. 1981).

Under this settled law, the district court could summarily enforce GTOR and Wudi's Settlement Agreement. GTOR alleged that some of Wudi's social media posts breached paragraph 6(b) of the Agreement. Neither party contested below—or disputes on appeal—that paragraph 6(b) is a valid term of an enforceable settlement agreement. And Wudi did not contest that it or one of its affiliates made the social media posts that contained the trademarks listed in paragraph 6(b). With the material facts concerning the Agreement's existence, its terms, and Wudi's allegedly breaching conduct not in dispute, the parties' arguments turned on how to interpret paragraph 6(b) and apply it to Wudi's conduct.

The meaning of paragraph 6(b) is a legal question. The Agreement provides that Virginia law controls its interpretation. "Under governing Virginia law, settlement agreements are treated as contracts subject to the general principles of contract interpretation." *Byrum v. Bear Inv. Co.*, 936 F.2d 173, 175 (4th Cir. 1991); *see, e.g., Yourko v. Yourko*, 884 S.E.2d 799, 804 (Va. 2023); *Southerland v. Est. of Southerland*, 457 S.E.2d

18

375, 378 (Va. 1995). And "[t]he interpretation of a contract presents a question of law." *PMA Cap. Ins. Co. v. US Airways, Inc.*, 626 S.E.2d 369, 372 (Va. 2006); *see also Kay Co. v. Equitable Prod. Co.*, 27 F.4th 252, 258 (4th Cir. 2022) ("A district court's analysis of a settlement agreement is a matter of contract interpretation, a legal issue that we review de novo."). So resolving GTOR's motion to enforce the Agreement required the district court to decide a question of law and apply it to undisputed facts. Moreover, the district court could reasonably consider Wudi's unclean hands "excuse for nonperformance [to be] comparatively unsubstantial." *Millner*, 643 F.2d at 1009 (internal quotation marks omitted). Accordingly, our precedent allowed the district court to summarily enforce the parties' Agreement.

The majority recognizes that our precedent requires a plenary evidentiary hearing "'if there is a *factual* dispute over an agreement's terms'" and asserts such a dispute exists here. *Supra*, at 14 (brackets and ellipsis omitted; emphasis added) (quoting *Hensley*, 277 F.3d at 541). Tellingly, however, the majority does not cite any concrete factual dispute in support of its conclusion. The parties agree that they entered into an enforceable Settlement Agreement and that paragraph 6(b) is a valid term in the Agreement. Moreover, Wudi concedes that it or one of its affiliates made the social media posts that formed the basis of GTOR's motion to enforce. The remaining dispute involves a classic question of law—the interpretation and application of a contractual provision. Although the parties filed competing affidavits from company representatives testifying they each believe paragraph 6(b) has a particular meaning, contrary subjective beliefs about a contract's meaning amount to a legal disagreement, not the kind of factual dispute cases like *Hensley*

19

contemplate. And the majority does not suggest paragraph 6(b) is so ambiguous that the district court had to resort to parol evidence to resolve GTOR's motion to enforce.

At points, the majority suggests the district court's order cannot be an order for specific performance enforcing the Settlement Agreement, as the district court said it was, because it "arguably" commands Wudi in terms beyond what the Agreement itself requires. *Supra*, at 13. That is a potentially valid concern about the *merits* of the district court's enforcement order. But it is not a reason to reject the district court's characterization of the proceedings before it and to send this case back for a do-over on an injunction motion that was never filed by GTOR or considered by the court.

Nor does the majority's analogy to *Sierra Club v. Van Antwerp*, 526 F.3d 1353 (11th Cir. 2008), undermine the conclusion that the district court here ordered specific performance. *Supra*, at 12–13. Quite unlike this case, the district court's "Remedies Order" in *Van Antwerp* followed a grant of summary judgment on a challenge to Clean Water Act permits brought under the Administrative Procedure Act. *See Van Antwerp*, 526 F.3d at 1356, 1358. The district court gave "clear, enforceable directives" granting the relief "that Sierra Club requested in its complaint." *Id.* at 1358. The case did not involve remedying a breach of contract or enforcing a settlement agreement. The court did not purport to be interpreting and compelling specific performance of mutually agreed-upon terms, as the district court did here. *See, e.g.*, *Ford v. Citizens & S. Nat'l Bank*, 928 F.2d 1118, 1122 (11th Cir. 1991) ("The motion to enforce the settlement agreement essentially is an action to specifically enforce a contract." (internal quotation marks omitted)); *Saber v. FinanceAmerica Credit Corp.*, 843 F.2d 697, 702 (3d Cir. 1988) ("A settlement

20

agreement is a contract, and an order enforcing a contract is ordinarily described as an order for specific performance."). Thus, the *Van Antwerp* court's jurisdictional ruling is of little help in discerning what species of equitable relief—or fowl, in the majority's parlance—is present here.

## II.

The majority breaks new ground by holding that a party requesting enforcement of a settlement agreement must satisfy the four-factor test of either *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), or *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), or both. These tests are prerequisites to obtaining preliminary or permanent injunctive relief. But neither applies in this context, and it is a mistake to require their application both in this case and more generally to motions seeking to enforce settlement agreements.

For starters, our precedent has not required district courts to apply *Winter* or *eBay* before enforcing settlement agreements over which they have ancillary jurisdiction. *See*, *e.g.*, *Swift*, 636 Fed. App. at 155–156; *Topiwala*, 509 Fed. App. at 187. Indeed, the majority cites no authority—from any court—for doing so; neither does Wudi.

There is good reason for this dearth of supporting authority. Specific performance of a settlement agreement is not the same remedy as a judicially crafted injunction. Under *Winter*, a party seeking a preliminary injunction must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." 555 U.S. at 20. Under *eBay*, a party requesting permanent injunctive

21

relief must win on the merits and then demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." 547 U.S. at 391. Both tests incorporate similar considerations, though in different terms calibrated for the distinct proceedings in which they are used. Settlement agreements largely account for these considerations. After all, a settlement agreement constitutes the parties' bargained-for resolution of the case and agreed-upon remedies to redress their injuries based on their understanding of the balance of hardships and equities between them. Because public policy favors settlement, *see McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215 (1994), it generally does not disserve the public interest to enforce parties' agreements.

Requiring a district court to undertake a separate *Winter* or *eBay* analysis before enforcing a settlement agreement gives the court authority to supersede the parties' intentions as expressed in their agreement, such as by reweighing the balance of equities between the parties. And when it comes to the final enforcement of a settlement agreement, the majority's approach weakens the stability and finality that settlement offers because it allows a party with buyer's remorse to rely on *eBay*'s second factor to undermine a settlement agreement whenever it concludes paying damages would be more palatable than keeping its end of the original bargain. The majority fails to grapple with these potential consequences.

22

Moreover, the facts belie the majority's insistence that the First Order "was a preliminary injunction," *supra*, at 13, that must "satisfy the four-factor *Winter* test," *supra*, at 15. Recall that the first *Winter* factor requires a court to assess whether the moving party "is *likely* to succeed on the merits." 555 U.S. at 20 (emphasis added). That question was not at issue below. GTOR charged Wudi with violating the Agreement's restrictions on social media advertising and asked the district court to "enter an order requiring Wudi to take the actions necessary to comply with" the Agreement. J.A. 116. No assessment of whether GTOR would *likely* prevail in the future on its claim that Wudi breached the Agreement was necessary or requested. Instead, GTOR asked the court to proceed directly to the merits, and the court did so when it found Wudi in breach and ordered it to come into compliance with the Agreement. Thus, the First Order was not "a preliminary injunction" that "preserve[d] the status quo pending a final trial on the merits," *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999), but rather a decision resolving the merits and ordering Wudi to specifically perform its duties under the Agreement. By labeling such an order a preliminary injunction and mandating that the district court apply *Winter*, the majority creates confusion for lower courts going forward.

### III.

Even though our precedent permitted the district court to summarily enforce the parties' Settlement Agreement, the district court still had to comply with the Federal Rules of Civil Procedure when it issued its enforcement order. I agree with the majority that the district court had to follow Rule 65(d); however, I would hold that the district court's order satisfied that rule and that Rule 52 did not impose additional requirements on the court.

23

Beginning with Rule 52, the district court was "not required to state findings or conclusions when ruling on" the motion to enforce. Fed. R. Civ. P. 52(a)(3). The court's enforcement order did not follow "an action tried on the facts without a jury." Fed. R. Civ. P. 52(a)(1). Nor did it grant or refuse "an interlocutory injunction." Fed. R. Civ. P. 52(a)(2). This conclusion is consistent with our precedent on summary enforcement of a settlement agreement. *See Hensley*, 277 F.3d at 540–541; *Millner*, 643 F.2d at 1009.

To order specific performance of the Agreement, the district court had to comply with Rule 65(d). This is because, "however it might be characterized for other purposes," any "equitable decree compelling obedience under the threat of contempt" is "an 'order granting an injunction' within the meaning of Rule 65(d)." *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 75–76 (1967). That rule requires a court issuing such an order to "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

The district court satisfied these requirements. Regarding the reason for the order, the court found Wudi to be "in breach of Paragraphs 6(b) and 11 of the Settlement Agreement" by using forbidden trademarks in the European Carve-Out. *Wudi Indus. (Shanghai) Co. v. Wong*, No. 1:20cv908-CMH-MSN, 2022 WL 2187419, at *1 (E.D. Va. Apr. 29, 2022); *see* Fed. R. Civ. P. 65(d)(1)(A). The district court sufficiently stated the order's terms and requirements by providing the basis for the court's jurisdiction, detailing in five paragraphs the specific actions Wudi must take to comply with the Settlement

24

Agreement and the time for compliance, threatening contempt to coerce compliance, and awarding attorneys' fees to GTOR. *See Wudi Indus.*, 2022 WL 2187419, at *1–2; Fed. R. Civ. P. 65(d)(1)(B)–(C). The district court's finding of breach, plus the specificity of the order's requirements, suffice for us to understand and review the district court's interpretation and application of the Agreement. Indeed, the five paragraphs specifying what Wudi must do and when and where it must do it ensure "that those who must obey [the order] will know what the court intends to require and what it means to forbid." *Int'l Longshoremen's Ass'n*, 389 U.S. at 76; *see Abbott v. Perez*, 138 S. Ct. 2305, 2321 (2018) ("Rule 65(d) protects the party against which an injunction is issued by requiring clear notice as to what that party must do or refrain from doing.").

IV.

Because the district court did not commit a reversible procedural error, I would reach the merits of Wudi's appeal. However, the majority has remanded the case without opining on the merits of the district court's decision, so I similarly do not address the parties' merits arguments.

25